[Civil No. 1873.   Filed December 10, 1921.]

[202 Pac. 230.]

## THE CITY OF GLOBE, a Municipal Corporation, Appellant, v. DELFINA MORENO, Appellee.

1. MUNICIPAL CORPORATIONS—COMPLAINT OF OWNER OF LOT ABUTTING ON STREET HELD TO CHARGE CITY WITH NEGLIGENCE IN FAILING TO PROVIDE FOR DRAINAGE OF WATER OFF OF LOT AFTER ELEVATION OF GRADE OF STREET.—In action against a city by owner of lot abutting on street for damages to lot from surface water following elevation in grade of street, complaint *held* to charge the city with negligence in failing to provide for the drainage of surface water off of plaintiff's lot during rainstorms, and not to charge that city had been negligent in elevating the street grade or in failure to construct a sufficient drain as a part of the improvement.

2. MUNICIPAL CORPORATIONS—NOT REQUIRED TO PROVIDE FOR DRAINAGE OF LOT ABUTTING ON STREET AFTER ELEVATION OF GRADE.—A city having acted within its rights in elevating the grade of a street, thereby causing abutting lot to be lower than the level of the street, was not required to provide for the drainage of such abutting lot to protect it from storm and flood waters.

APPEAL from a judgment of the Superior Court of the County of Gila.   Frank B. Laine, Judge.   Reversed and cause remanded, with directions.

Mr. Clifford C. Faires and Messrs. Rice & Mathews, for Appellant.

Mr. Frank McCann, for Appellee.

ROSS, C. J.—The plaintiff sued defendant city, claiming damages to her property due to the negligence of the city. After alleging that she was the owner of a lot 61.65 feet by 100 feet facing upon Broad Street, upon which were one six-room adobe house and one two-room frame house, she stated her cause of action in the following language:

"IV. That prior to the 14th day of July, 1919, the said defendant raised the grade of Broad Street in front of said property by filling up the street in front of said property, which caused said property to be about four feet below the level of said street; that prior to said time said property had been slightly higher than the grade of the street at all points touching said property.

"V. That at the time of so raising the grade of said street said defendant negligently, unskillfully, wrongfully and tortiously failed, neglected, and refused to arrange, build, or maintain any sufficient drain or outlet for storm or flood waters which might become deposited on the said property so owned by this said plaintiff; that at the time of the raising of said grade and at all times subsequent thereto, the said plaintiff has protested against the said conduct of said defendant, and at all times has demanded that a sufficient drain or outlet be arranged, built, and maintained for said purposes, and that said defendant has at all times failed, neglected, and refused to do so.

"VI. That on the said 14th day of July, 1919, on account of a storm which took place on said date, the said property owned by this plaintiff became inundated and flooded with water, and a large body of storm and flood waters accumulated on her said property, destroying the said two buildings situated thereon, together with the furniture and fixtures and personal property therein, by reason of which said

plaintiff was and is damaged in the sum of Ten Thousand Dollars; that said damages would not have been incurred had it not been for the said conduct of said defendant in so failing, neglecting, and refusing to build or maintain a sufficient drain or outlet for storm or flood waters as hereinbefore set out."

The defendant demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. In addition it set up in its answer various grounds of defense, which we do not set forth, for the reason that we believe that the demurrer should have been sustained. The case was tried to a jury, and resulted in verdict and judgment in favor of the plaintiff, and from which, and the order overruling the motion for a new trial, the defendant has appealed.

The first assignment is that the court erred in overruling defendant's demurrer. If the complaint, taken in its most favorable aspect, does not state facts showing liability upon the part of the defendant, the court committed error in overruling the general demurrer.

Condensed and reduced the complaint states that the defendant city in grading Broad Street raised the surface thereof where it abutted on plaintiff's lot so that her lot, which before the grading was slightly higher than the street, became, after the grading, about four feet below the level of the street, and, the defendant having failed, neglected, and refused to provide a sufficient drain or outlet for storm or flood waters, because of a storm on July 14, 1919, her property became inundated and flooded with waters accumulating thereon, which destroyed her two buildings and their contents; that said damages were due to defendant's failure, neglect, and refusal to build or maintain a sufficient drain or outlet for storm or flood waters. As we gather, the specific negligence charged against the defendant is not in raising the grade of

the street, but the failure of the defendant to construct somewhere, some place, sufficient drain or outlet to carry the rain and flood waters off of plaintiff's lot during rainstorms. The pleader does not charge negligence in the construction of the improvement, nor in the failure of defendant to provide drains and outlets as a part of the improvement, but does charge generally a duty upon defendant to provide sufficient drains and outlets for the escape from her property of storm and flood waters that might be deposited thereon. The purport of the complaint is that defendant acted within its rights and powers in raising the grade of Broad Street, and committed no acts of negligence in doing so, but, having raised the grade, it became the defendant's duty to provide for the drainage of plaintiff's lot. It is alleged that had the defendant provided such drainage her property would not have been injured. In other words, the negligence charged is one of omission. The question is, Did the defendant under the circumstances owe the duty to the plaintiff to drain her lot?

The waters mentioned in the complaint as causing the damages to plaintiff's property were evidently mere surface waters.

"Surface waters are such as defuse themselves over the surface of the ground, following no defined course or channel. . . . " 40 Cyc. 639.

These waters are described in the complaint as "storm waters," and, without any further description, as that they ran on to and across her premises in a well-defined course or channel, it must be assumed that they ran over plaintiff's ground with the uniformity and defusion somewhat as they fell from the clouds.

McQuillin on Municipal Corporations, section 2707, says:

"Surface water must be distinguished from water flowing in a channel. The rights and duties of a municipality are often different in the one case from the other, as already stated, and as will be hereafter noticed. There is no duty to construct sewers to take care of surface water, and it follows that ordinarily the failure to protect citizens from surface water is not actionable."

Elliott on Roads and Streets, section 561, third edition, says:

"A city is not, however, liable merely because water collects on land in consequence of its being lower than the grade of a street which the city had a right to establish."

Dillon on Municipal Corporations (fifth edition), after discussing in section 1731 the liability of municipal corporations for damages caused by obstructing natural streams, says in section 1732:

"As to surface water, quite different principles apply. This the law very largely regards (as Lord Tenterden in an analogous case phrased it) as a common enemy, which every proprietor may fight or get rid of as best he may."

In section 1733 the same learned author states the respective rights and duties of a city and its property owners with reference to surface waters as follows:

"Authority to establish grades for streets, and to grade them, involves the right to make changes in the surface of the ground, which may affect injuriously the adjacent property owners; but where the power is not exceeded, there is no liability, unless created by special constitutional provision or by statute (and then only in the mode and to the extent provided), for the consequences resulting from the power being exercised and properly carried into execution. On the one hand, the owner of the property may take such measures as he deems expedient to keep surface water off from him, or turn it away from his premises on to the street; and, on the other hand, the municipal authorities may exercise their lawful powers in re-

spect to the graduation, improvement, and repair of streets, without being impliedly liable for the consequential damages caused by surface water to adjacent property.''

The above-quoted text is abundantly supported by the decisions. In *Wood* v. *City of Tacoma,* 66 Wash. 266, 119 Pac. 859, the court said:

''It is now established law in this state that damages cannot be recovered for consequential injuries to private property, occasioned by the original grading of streets and alleys. The dedication of streets and alleys to the public use implies an agreement of the dedicator and his successors in interest that the city may establish grades and improve the streets and alleys thereto in aid of such use.''

This case also ruled that the city incurred no liability to a property owner whose premises were flooded with surface water occasioned by the grading of its streets.

In *Adams* v. *Oklahoma City,* 20 Okl. 519, 95 Pac. 975, the court refused to hold the city liable to an abutting lot owner whose premises were flooded by reason of street improvements, because the statute provided that abutting owners of property having permanent improvements erected thereon with reference to an established grade, should be compensated for damages suffered by change of grade, but made no provision for damages sustained by abutting owners on account of the establishment of an original grade, on the principle of *''expressio unius est exclusio alterius.''* The court said:

''There is good reason for the policy that cities should not be liable for damages occasioned in the first establishment of grades. . . . A building is placed upon a hill with a reasonable expectancy that a street is to be cut there, and that such building will in all probability be above the grade when established; and one is put upon a draw or low land with a reasonable apprehension that a street will be graded

23 Ariz.—9

and filled, being raised at least to a grade far above its level. These are the inevitable incidents of improvement, development, and progress. Otherwise no cities could reasonably be built.''

The reasons suggested in the Washington and Oklahoma cases for exempting cities from damages to abutting property owners on account of the establishment of the initial grade appeal to us as being well founded, and doubtless our legislature, in providing for compensation occasioned by a change of grade, but not in the establishment of an original grade, was influenced by the same considerations. Paragraph 1897, Civ. Code. In the Adams case the court quotes from *Jordan* v. *Benwood*, 42 W. Va. 312, 57 Am. St. Rep. 859, 36 L. R. A. 519, 26 S. E. 266, with approval the following:

''A city is not liable for damages to a lot owner because change of grade of a street prevents surface water of the lot from flowing off. It is not different even if the surface water is, by reason of such change of grade, increased in quantity on the lot, if not cast in a mass or body upon the premises. Nor is a city liable for mere surface water flowing from a street upon an adjoining lot''—citing a great number of cases.

In *Corcoran* v. *City of Benicia*, 96 Cal. 1, 31 Am. St. Rep. 171, 30 Pac. 798, it was held that the municipal corporation was not responsible for damages caused by the gathering of surface waters not running in a natural channel, produced by the raising of a street to the grade established by law.

It would serve no purpose to quote from other cases, as they reason along the lines of those from which we have quoted. We cite, however, some of the cases: *Strauss* v. *City of Allentown*, 215 Pa. 96, 7 Ann. Cas. 686, 63 Atl. 1073; *Henderson* v. *City of Minneapolis*, 32 Minn. 319, 20 N. W. 322; *Freburg* v. *City of Davenport*, 63 Iowa, 119, 50 Am. Rep. 737, 18 N. W.

705; *Hirth* v. *City of Indianapolis,* 18 Ind. App. 673, 48 N. E. 876; *Lampe* v. *City of San Francisco,* 124 Cal. 546, 57 Pac. 461, 1001; *Lynch* v. *Mayor,* 76 N. Y. 60, 32 Am. Rep. 271; *Knostman* v. *City of Davenport,* 99 Iowa, 589, 68 N. W. 887.

The plaintiff seems to rely upon *City of Globe* v. *Shute,* 22 Ariz. 280, 196 Pac. 1024, and *City of Tucson* v. *Dunseath,* 15 Ariz. 355, 139 Pac. 177, as supporting her claim that the defendant city in this case owed the duty to drain her premises.

In the Shute case we held that the city was liable for damages caused by defectively constructed drain built by the city to divert water of a natural stream because it had not exercised reasonable care and diligence to see that the drain was of sufficient size to carry the water that might reasonably have been anticipated. In the Dunseath case the city was held liable in damages because it had collected surface water in large quantities in a kind of reservoir or pond upon the street, which was released by the breaking or washing away of the obstruction and the water precipitated in greater volume and force on to the property of Dunseath than it would otherwise have flowed. As McQuillin on Municipal Corporations, section 2711 says:

"One rule in regard to surface water may be said to be well settled. It is an exception to the general rule of nonliability, in that municipalities are held liable where they collect surface water by an artificial channel or in large quantities, and pour it, in a body, upon the land of a private person to his injury."

This rule, announced by McQuillin and followed in the Dunseath case, has been adopted by most of the courts.

The facts set forth in the plaintiff's complaint, however, do not bring it within the rule laid down in the Shute case nor the rule in the Dunseath case. There

is no allegation in the present complaint showing that the city had done anything more than raise the grade upon Broad Street in front of her property, and that the city had a perfect right to do so without incurring an obligation to provide drains for mere surface waters seems obvious from the authorities.

The judgment of the lower court is reversed, and the cause remanded, with directions that the demurrer be sustained, and that the plaintiff, if she may be so advised, be permitted to amend her complaint.

McALISTER and FLANIGAN, JJ., concur.