[Civil No. 4430.   Filed March 9, 1942.]

[123 Pac. (2d) 172.]

C. F. CLAUSEN and MAUDE LAURA CLAUSEN, His Wife, Appellants, v. SALT RIVER VALLEY WATER USERS' ASSOCIATION, a Corporation, Appellee.

Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellants.

Messrs. Sloan, Scott and Green, for Appellee.

McALISTER, J.—This is an appeal by C. F. Clausen and Maude Clausen, his wife, from a judgment dismissing their complaint against the Salt River Valley Water Users' Association and ordering that they take nothing thereby. The purpose of the action was to recover damages to real estate owned by plaintiffs.

The facts alleged in the amended complaint are substantially as follows: On July 24, 1897, Casey C. Montgomery filed a homestead entry on the west half and the southeast quarter of the southeast quarter of section 4, township 2 north, range 3 east, of the Gila and Salt River Base and Meridian, then vacant and unoccupied land of the United States, and in March,

1903, received from the United States a patent therefor. Through various mesne conveyances this land became, in 1927, the property of J. M. and H. C. Sparks and their wives, who later that year subdivided it into small tracts suitable for improvement as citrus homesites and designated the subdivision as Squaw Peak Tract. Still later that year they sold the plaintiffs tracts 10, 11 and 12 of the subdivision and referred in the deed of conveyance to the plat of the subdivision which showed the right of way of the Arizona canal, extending over and upon a portion of tract 10. At the time of the purchase the plaintiffs knew that this canal had existed adjacent to the north side of said land substantially in the same condition as it then was for approximately 40 years, without any means for discharging any of the waters flowing therein upon said tract and that its south bank at that point was amply sufficient to prevent any breakage thereof in case an excess amount of water ran into it from any source.

It is further alleged that, relying upon the manner in which the canal had been constructed and maintained, the plaintiffs expended a large sum of money in developing, improving and setting out to high class citrus fruits said premises so as to make them a desirable citrus homesite and have continued to improve the same, the citrus trees thereon now being eleven years old, and the tract of land, prior to the damaging thereof by the defendant by constructing the cement spillway in question, was a choice citrus homesite of the value of approximately $10,000.

The Arizona canal was constructed by a corporation, The Arizona Canal Company, prior to 1896, from Granite Reef Dam on the Salt River to a point on New River, approximately a distance of 50 miles. It runs in a northwesterly direction on the north side of Salt River. The Arizona Canal Company ob-

tained from the United States, on or about February 4, 1896, the right to construct, operate and maintain the canal over the described premises pursuant to the Act of Congress of March 3, 1891, and that company operated and maintained it until sometime after the year 1905, when it was conveyed to the United States as a part of the Salt River Arizona Reclamation Project, the care, operation and maintenance of which the defendant took over in October, 1917, and has since had.

As originally constructed the canal was 20 feet wide and 5 feet deep, being designed to carry 300 second feet of irrigation water, and most of the material taken from the excavation was deposited on the south side thereof and packed down to make a bank to prevent the water from the canal from flowing over the south bank. Since its construction the canal has been enlarged so that it will now carry a larger quantity of water, but at all times it has been maintained as a trench excavated in the ground with a strong earth bank on the south or lower side, about 4 feet above the natural level of the ground with no bank on the north or higher side, the result being that the canal intercepts all surface water flowing into it from the north side and takes it into the canal system operated by defendant, whereupon it is used for irrigation purposes, any excess amount thereof being carried down the canal and through the laterals connected therewith, the south bank thereof as maintained being a barrier to any surplus water flowing over or across it upon the lands of the plaintiffs hereinbefore described.

It also appears from the amended complaint that in July, 1940, the defendant, for the purpose of improving the canal by making it more convenient to operate in times of flood, by preventing loss of irrigating water through breakage thereof at other points, and by preventing damages to other persons in the

vicinity through breaks which occasionally occur, constructed a concrete spillway on the south side of the canal upon that portion of it situated upon plaintiffs' tract No. 10, being on the high side of the premises of plaintiffs, by lowering, a depth of 2 feet for a distance of 200 feet, the earth bank which had theretofore been maintained and that the defendant has ever since maintained this spillway and intends to continue to maintain it; that as constructed it is capable of discharging, and is intended to and will discharge, upon the lands of plaintiffs when the canal is full and checked up below plaintiffs' land, 1800 second feet of water and when full but not checked up 1000 second feet of water; that the spillway has been designedly constructed for the purpose of discharging, and will discharge, water flowing in the canal whenever it, for any cause whatsoever, rises above the top of said spillway, and all of the water so discharged will be cast violently upon plaintiffs' premises. The lay and grade of the land and the condition of the soil, which the cultivation for citrus requires, are such that discharging any considerable quantity of water thereon, through the spillway, will cause deep gulleys to be washed therein, rocks and debris cast thereon, citrus trees damaged, up-rooted and destroyed, and other improvements damaged by rushing water and the deposit of stones and mud thereon.

The plaintiffs further aver that due to the great length of the canal above plaintiffs' land and the fact that it is smaller at its lower end below plaintiffs' premises than it is above them, and the fact that great fluctuations in the water flowing therein frequently occur and that often floods come which discharge large volumes of storm water in the canal, large quantities of water will pass therefrom through the spillway at frequent intervals, occasionally several times during a single year, and on an average of not less than twice

each year, and that by reason of being so rendered subject to flooding and washing by waters discharged by said spillway, plaintiffs' premises have become wholly unsuited for use as a citrus homesite and the value of the trees thereon has been wholly destroyed and the usefulness of the land has been greatly impaired and by reason of these facts, the construction and maintenance of the spillway constitutes a taking or damaging of plaintiffs' land and the improvements thereon within the meaning of section 17, article II, of the Constitution of the State of Arizona.

Finally it is alleged that plaintiffs, by virtue of the ownership of the land herein involved, are shareholders in the defendant and as such entitled to be advised of the operations of the defendant and treated on an equality with other shareholders; that the defendant knew, or should have known, that it had no right to take or damage plaintiffs' land for the improvement of its canal, without just compensation, but that, in the absence of a necessity therefor, it determined to construct the spillway without advising plaintiffs thereof or offering to negotiate for the amount of compensation to be awarded plaintiffs, and to prevent plaintiffs from stopping the construction of the spillway, the defendant, though there was no immediate need therefor, proceeded to construct the same hurriedly and on a Sunday so that plaintiffs did not discover it until the work was practically completed, that the act of defendant in constructing the spillway without following the customary procedure and without making compensation to plaintiffs was an unwarranted, oppressive and arbitrary act and entitles plaintiffs to exemplary damages in the sum of $250 and actual damages to the extent of $7500 since plaintiffs' premises have been reduced this amount in value by defendant's act, their value now being only $2500. The prayer is for damages in these respective sums.

A motion by the defendant to dismiss the cause, upon the ground that the complaint failed to state a claim upon which relief could be based, was granted after plaintiffs indicated they did not care to amend. It is this judgment of dismissal the court is asked to review.

Appellants' position is that the amended complaint does state facts upon which the relief asked for could be granted, hence the one error assigned is the order sustaining the motion to dismiss the complaint and entering judgment dismissing it, though appellants give these three reasons why this is true, each one constituting a separate assignment: The facts alleged show, first, a taking or damaging of their property by extending and greatly increasing the burden of the easement secured when the canal was constructed; second, a taking or damaging of the premises by setting up facts bringing defendant's act constructing the spillway within the provisions of section 17, article 2, Constitution of the state, which provides that private property shall not be taken or damaged for public or private use without just compensation therefor; third, a taking or damaging of appellants' property that is not justified by the reservation to the United States of a right of way for ditches or canals in pursuance of section 945, Title 43, United States Code Annotated, since the acts complained of were not performed by authority of the United States nor were they of a character authorized by the reservation of a right of way.

It appears from the allegations that the Arizona canal was constructed prior to 1896 by a private corporation, The Arizona Canal Company, upon vacant and unappropriated land of the United States, before any right of way therefor had been obtained under the Act of Congress of March 3, 1891, and, this being true, appellants contend that its origi-

nal construction was under the authority of the Acts of Congress of July 26, 1866, and July 9, 1870, being sections 2339 and 2340, United States Revised Code, which have been consolidated and codified as section 661, Title 43, United States Code Annotated. One avails himself of these sections by merely constructing a canal, no application to any official of the United States before hand being necessary to give him a right of way for his canal over the public lands. *Welch* v. *Garrett,* 5 Idaho 639, 51 Pac. 405. However, the Arizona Canal Company did not rely solely on construction of the canal to secure its right of way, but on February 4, 1896, after it had constructed the canal, obtained from the United States by following the procedure outlined in the Act of Congress of March 3, 1891, 43 United States Code Annotated, sections 946–949, the right to construct, operate and maintain its canal over the premises in question, and this was as effective as though it had secured the right of way prior to construction.

■ Appellee contends, however, that by reason of the fact that the Act of Congress of August 30, 1890, 43 United States Code Annotated, section 945, was in force when the canal was constructed, there was expressly reserved from the lands patented to appellants' predecessor in title the right of way for the canal over the premises in question and that the effect of this was that title to the right of way remained in the government and never passed to the patentee of the land upon which it was constructed. That act provides that it shall be expressed in each patent to lands west of the one hundreth meridian taken up after that date, that there is reserved from the lands described in the patent a right of way thereon for the ditches or canals constructed by authority of the United States. In other words, while appellants contend that appellee had an easement in the right of way, or at least only

a limited fee subject to reverter in the event the use of the canal should be discontinued, appellee's position is that it had the absolute fee thereto. Under the facts alleged, it is, we think, wholly immaterial whether appellee's interest in the fifty feet marginal limit on either bank of the canal was an easement, a limited fee, or an absolute fee, for no interest it could have held therein, even an absolute fee, would have given it the right to construct, on the south bank of the canal, a spillway two feet in depth and 200 feet in length that will at times divert large quantities of water from the canal and throw it on the premises of appellants, the result being that it will wash gulleys therein, throw rocks and debris thereon and destroy many of the citrus trees that have been growing there for the past eleven years.

Appellee points out, however, that this court held in *Maricopa County Municipal Water Conservation District No. 1* v. *Roosevelt Irrigation District,* 39 Ariz. 357, 6 Pac. (2d) 898, that one who, by means of a canal, intercepts and obstructs surface flood waters in their natural course and casts them upon another who would not otherwise be damaged by them, is liable for the damage caused, and that for some distance in either direction from appellants' premises numerous arroyos or washes come down to the Arizona canal from the country to the north and, though normally dry, carry large quantities of flood water in times of storm and unless permitted to continue in its natural course to the Salt River through a spillway constructed in the south or high bank of the canal, similar to that complained of here, such flood water will be deflected by said canal and cause breaks therein at various points through which it will be discharged upon premises not otherwise subject to flooding.

It is plain from this statement that the spillway was constructed to cast some of the waters in the

canal upon the premises of appellants when its waters are augmented by those flowing into it in times of storm from washes north of it and east of the spillway, and that this was done for the purpose of preventing a break in the south bank of the canal lower down or farther west and a consequent discharge of such waters on premises not otherwise subject to flooding. The waters in numerous washes north of the canal, according to the complaint, flow into it for many miles east of appellants' premises and are brought to the spillway by the canal, and, this being true, it would appear that under *Maricopa County Municipal Water Conservation District No. 1* v. *Roosevelt Irrigation District, supra,* its right to cast such waters upon appellants' premises without incurring liability for any damages that might result therefrom would be no greater than its right to permit these waters to be discharged through a broken embankment upon premises west and down the canal from the spillway not otherwise subject to flooding without rendering itself liable for the damage caused thereby.

█ Appellee justifies its construction of the spillway for turning the flood waters intercepted by the canal upon appellants' premises, however, by stating that while the natural water courses north of the canal have in the passing of the years and by reason of infrequency of flood waters in them been converted south of the canal to agricultural and other uses, they nevertheless remain the natural channels for the discharge of flood waters into their natural outlet, the Salt River, and that appellants' premises are situated in one of these. In advancing this proposition appellee overlooks the fact that the question is whether the complaint states facts upon which relief may be granted, or, as was the case under the old procedure, whether it states facts sufficient to constitute a cause of action, and in determining this the court considers

only the facts alleged. There is no allegation in the complaint that the premises of appellants are situated in one of these natural water courses. Hence it cannot be considered in determining the sufficiency of the complaint. If it is a fact and in appellee's opinion would aid it in defeating the action, it would be necessary to take advantage of it by way of defense.

Appellee contends further that it was within its rights in constructing the spillway for the reason that the amended complaint alleges that appellants are shareholders in appellee association because they could not have become such unless they or their predecessors in title had subscribed to. a water right application which, among other things, provides:

"8. And I do hereby grant, bargain, sell, convey, and confirm to the United States of America and its successors in charge of the project all rights of way for ditches, canals, flumes, pipe lines, telegraph and telephone transmission lines, or other structures now constructed by or under the authority of the United States for or in connection with the said project, and all rights of way that may be or become necessary and suitable and that may be required for the prosecution and operation of the said project, and for the construction, maintenance, and operation of ditches, canals, flumes, pipe lines, telegraph and telephone transmission lines, or other structures that may be constructed by or under the authority of the United States and its successors in charge of the project for and in connection with said project, to have and hold the same, . . . ''

Even though this section did authorize appellee to construct the spillway, this would be of no assistance to it in the situation presented, for it would not justify a violation of the rule announced in *Maricopa County Municipal Conservation District No. 1* v. *Roosevelt Irrigation District, supra,* and permit appellee to cast the water of the canal on the premises of appellants through the spillway without protecting these

premises from its ravages. And if the quoted language should be construed to mean that appellants, by signing the application, conveyed to appellee a right of way across their premises for a drain or canal to carry to Salt River the flood waters of the Arizona canal running over the spillway, the right thus granted would be one to construct a canal or drain over these premises to carry the surplus water going over the spillway and not one authorizing appellee, or anyone else, to cast such waters violently upon these premises, to run wild, so to speak, that is, wherever the character or condition of the land would take them, either within or without the claimed right of way. And there is nothing in the record indicating that appellee constructed or intended to construct a drain or canal on the right of way over appellants' premises to take care of the waters from the spillway. The construction of a spillway, fraught with such consequences as this one, in the absence of such a drain, constitutes, within the meaning of section 17, article 2, State Constitution, a taking or damaging of appellants' lands and the improvements thereon without just compensation.

The principal reason why the amended complaint does not, in the view of appellee, state facts upon which relief may be granted, is that it does not allege that the Arizona canal has overflowed and discharged waters through the spillway upon the premises of appellants, the position being that no injury has been, or can be, suffered by appellants as a result of the construction of the spillway until this occurs and that to seek damages prior to the happening of this event is asking for anticipated and not actual damages which alone are recoverable. It is, of course, true that if the construction of the spillway has not injured appellants, they cannot recover damages therefor. They allege, however, that ''large quantities of

water will be discharged through said spillway upon plaintiffs' said premises to the maximum capacity of said spillway at very frequent intervals, occasionally several times during a single year and on an average of not less than twice each year," and that because this will happen the construction of the spillway has reduced the value of appellants' lands from $10,000 to $2,500. If it be true that the construction of the spillway has reduced the value of these premises, there can be no question but that appellants have been damaged to the extent of that reduction. *City of Chicago* v. *Taylor,* 125 U. S. 161, 8 Sup. Ct. 820, 824, 31 L. Ed. 638. The Supreme Court of the United States points out that in this case whether damages may be recovered by the owner of real estate for the construction of a viaduct by the city of Chicago, in the immediate vicinity of the real estate, depends upon whether "by reason of the construction of the viaduct, the value, that is, the market price, of the property had been diminished." "The real question," it states, "is, has the value of this property *to sell* or rent been diminished by the construction of this viaduct? It may be that it can no longer be used for the purposes of a coal yard, or for any purpose for which it has heretofore been used, but that would not be material if it can be rented or *sold* at as good a price for other purposes." (Italics ours.) Because no one has absolute knowledge that the Arizona canal will overflow through the spillway does not mean that proof of the fact with sufficient certainty for the purpose of the case cannot be made.

It is not necessary that water should have flowed over the spillway on the land of appellants and washed deep gulleys therein and deposited rock and debris thereon before it may be held it has been damaged. If the construction of the spillway had the effect of lessening the value of the land, it is just as

much damaged, to the extent its value is thereby reduced, as it would be if the reduction in value had been caused by the water actually flowing upon it from the spillway. And if, when a large volume of water, made up in part of that draining into the Arizona canal from the arroyos north of it, flows down it, the spillway as constructed may be the means of throwing this water on appellants' premises and flooding them, it would constitute a menace and danger that would depreciate their value, and this would be a matter for the jury or other trier of fact to determine. *Los Angeles County* v. *Sullivan,* 32 Cal. App. 325, 162 Pac. 907; *Telluride Power Co.* v. *Bruneau,* 41 Utah 4, 125 Pac. 399, Ann. Cas. 1915A, 1251; *Kentucky Hydro Electric Co.* v. *Woodard,* 216 Ky. 618, 287 S. W. 985; *State* v. *Carrow,* 57 Ariz. 434, 114 Pac. (2d) 896. In the Sullivan case the city sought to condemn a strip of land, through a larger tract, owned by Sullivan, for the purpose of constructing over it a storm drain or canal in the manner described in the complaint to carry flood waters which accumulated in times of heavy rains in the water shed contiguous to Sullivan's land, and the appellate court approved the following instruction relative to the elements to be considered in fixing the compensation Sullivan was entitled to as damages to the portion of the land not taken: "Now, if the particular kind of improvement proposed is one that *might have a tendency to flood the land some time in the future,* that possibility should be taken into consideration. It might be a very remote possibility; if so, it would have very little effect on the damages. Any probable contingency might have a considerable effect on the amount of damages." (Italics ours.) Appellee contends that this case is not in point because the evidence disclosed a flooding from the drain before the trial, but the only effect of this was to strengthen the proof offered by Sullivan that the

drain would flood his premises in times of storm. There would seem to be no question but that the spillway, as constructed by appellee, has a strong tendency to flood the land of appellants. Appellee constructed the spillway on the theory that it would relieve the Arizona canal by casting the waters on appellants' premises, and it does not seem reasonable that appellee would have gone to the trouble and expense of doing this unless it felt that it would accomplish this purpose. In view of its action appellee is hardly in a position to contend that appellants are not justified in believing and acting upon the belief that the spillway will accomplish what its builders intended it would. Whether the threat that it will do this is so menacing and dangerous that it depreciates the value of appellants' property, and if so to what extent, are clearly questions for the jury, or the judge, if sitting without one, to determine. The fact that it may be difficult to establish does not deprive appellants of the right to do so if they can.

In view of the foregoing, we are of the opinion that the amended complaint does state facts upon which relief could be granted and that the court was in error in dismissing it.

The judgment is reversed and the case remanded with instructions to deny the motion to dismiss.

LOCKWOOD, C. J., and ROSS, J., concur.