323 P.2d 692

**The STATE of Arizona, Appellant,**

**v.**

**Louis LEESON and Ada D. Leeson, husband and wife, dba Leeson Upholstery; Clell H. Warner and Rose G. Warner, husband and wife, dba Robert's Variety; Samuel White and Anne White, dba Country Club Laundry; Shew B. Hom, dba Mayfair Fine Foods; George Moeller and Blanche Moeller, husband and wife; Eli J. Donicone and Emerensa Donicone, husband and wife; and DeWitt Aurand and Chrystle B. Aurand, husband and wife, Appellees.**

No. 6302.

Supreme Court of Arizona.

March 26, 1958.

46

Robert Morrison, Atty. Gen., Jack G. Marks, Sp. Asst. Atty. Gen., Lyle R. Allen, Tucson, of counsel, for appellant.

Clarence E. Houston and Alice Nihan Truman, Tucson, for appellees Louis Leeson, Ada D. Leeson, Clell H. Warner, Rose

·G. Warner, Samuel White, Anne White, Shew B. Hom, George Moeller and Blanche Moeller.

Frank E. Murphy, Jr., Tucson, for appellees Eli J. Donicone, Emerensa Donicone, DeWitt Aurand and Chrystle B. Aurand.

STRUCKMEYER, Justice.

Appellees, plaintiffs below, filed their complaint against the appellant, the State of Arizona and others, claiming damages for the taking and damaging of certain of their property. Judgments were entered against the State of Arizona on the theory of inverse eminent domain, with the recovery over against the third-party defendant Pima County in favor of the state. Further facts necessary for the determination of this appeal will be set forth as the occasion demands.

■■■ Appellant first urges that these actions cannot be maintained for the reason that appellees have not complied with the statutory procedures for suing the state. Sections 12–821 and 12–823, A.R.S.1956. Section 12–821 provides in substance that persons having claims on contract or for negligence against the state which have been disallowed may bring an action, and Section 12–823 provides that a plaintiff shall file a bond securing all costs incurred by the state if the plaintiff fails to recover.

The appellees did not comply with the foregoing sections in that they neither filed claims nor posted bonds. They urge that inverse eminent domain is neither an action in contract nor in negligence, and for that reason contend that the cited sections have no application. Appellees' position is correct. We have held of and concerning a statute providing for the disposition of claims against a water district that it has no application to liabilities incurred under the principles of eminent domain. · Maricopa County Municipal Water Conservation Dist. No. 1 v. Warford, 69 Ariz. 1, 206 P.2d 1168. We have re-examined that holding and believe that its reasoning is sound and applicable to the instant case. We have also held that since Art. 2, Section 17 of the Constitution of the State of Arizona prohibiting the taking or damaging of private property without just compensation is self-executing, an injured party must be compensated even though the Legislature has not established a specific procedure therefor. County of Mohave v. Chamberlin, 78 Ariz. 422, 281 P.2d 128. We are therefore. of the opinion that it was not necessary for appellees to bring their suits on disallowed claims or otherwise comply with the enumerated sections.

This brings us to appellant's principal argument that in no event can a judgment be obtained against the State of Arizona for the reason that the taking and damag-

ing of the appellees' property, if any, was not by the State of Arizona. The answer to this contention can only be reached through a consideration of the relevant facts and the pertinent statutes. For some time there has existed near the City of Tucson, Arizona, the Davis-Monthan Air Force Base. Seemingly, its principal access is a county road known as 22nd street. This road, being used to a great extent by the Government personnel, was in the year 1953 in need of certain improvements. Thereupon, at the instigation of Pima County, the State Highway Engineer entered into a cooperative agreement with the duly authorized officer of the United States Government for the construction of 1.86 miles of improvements which included the construction of a drainage ditch, the source and cause of appellees' damage by flooding. This project was known as Arizona AD-6. It is undisputed that Pima County prepared the plans for the project; that the State of Arizona through its highway department examined the plans and after receiving approval from the Federal Government called for bids, entered into a construction contract and supervised the construction; that the Federal Government provided the funds for construction with the exception of the sum of $1,200 paid by Pima County.

By the Defense Highway Act of 1941, as amended, 23 U.S.C.A., ch. 3, § 101 et seq., the Congress of the United States authorized the granting of subsidies to the states to defray the cost of construction, maintenance, and improvement of access roads to military reservations. However, the actual work of construction is left to the individual states, the procedure being that the appropriate Federal officer is permitted to enter into contracts with the states for the purposes specified in the Act. This procedure has the approval of the Legislature of the state. Section 26–401, A.R.S.1956.

It is appellant's argument that the only relationship of the State of Arizona to the project was that of middleman between the Federal Government and the County. It is true that the State of Arizona was the middleman to accomplish the objective of both Pima County and the Federal Government; that is, to have this defense access road improved. Realistically considered, however, the status of the State is more than that of a middleman or agent of the United States of Pima County. It more nearly approximates that of a principal. While the constitution of the United States charges the Federal Government with the ultimate responsibility for the defense of the Nation, yet both the state and the county are integral parts and their interest so inextricably intertwined that each profits or suffers to the degree that the common defense is promoted or denied.

The state, as one of the 48 parties concerned, has a real and vital interest in the success of this aspect of government.

█ It is further urged that because 22nd street is a county road the state highway department is not authorized to spend state funds for its improvement. It is true that the Legislature by Section 18–132, A.R.S.1956 limited the use of state highway department funds to the construction and maintenance of state highways and state routes; but the state, as distinguished from the state highway department cannot, merely by limiting the expenditure of state highway department funds, destroy its responsibility under the constitutional provision that private property may not be taken or damaged without just compensation.

The state, through the state engineer, was authorized to enter into this construction project. Ch. 116, Laws of 1947, now Section 26–401, A.R.S.1956. The history of Section 26–401 plainly established, in our opinion, the state's responsibility. Originally, under Ch. 50, Laws of 1943, the state engineer was authorized only to enter into cooperative national defense projects.

"Section 1. Cooperative National Defense Agreements. The state engineer, with the approval of the state highway commission, is authorized and empowered to enter into cooperative agreements with the United States

secretary of war, United States secretary of the navy, the commissioner of public roads of the United States or any other authorized officer or agency of the United States, for the construction, acquisition, maintenance or improvement of roads and other projects necessary to national defense, inclusive of, but not limited to:" [Here follows enumeration of matters subject to cooperative agreements.] "Such projects may be constructed, maintained or improved, and property acquired therefor, whether the projects be on or off the state highway system."

Thereafter, when hostilities had terminated, the Legislature by Ch. 116, Laws of 1947, adopted this amendment:

"Section 1. Cooperative National Agreements. The state engineer, with approval of the state highway commission, may enter into cooperative agreements with the secretary or any authorized officer of the departments constituting the defense establishment of the United States, the commissioner of public roads of the United States or other authorized officer or agency of the United States, for construction, acquisition, maintenance or improvement of roads and other projects."

██ It is to be noticed that the Act of 1943 limited cooperative agreements to

projects necessary for national defense, whereas the amendment of 1947 permitted cooperative agreements without limitation. The last sentence of the Act of 1943 providing that the state engineer might enter into cooperative agreements whether on or off the state highway system was also deleted from the Act of 1947. We do not believe that this deletion can be construed to deprive the state of the right to construct, maintain or improve property off the state highway system. The power of the state to construct highways wherever deemed expedient has always been, as it is now, plenary except insofar as it may possibly be limited by the Federal or State constitution, and the authority of the state engineer is absolute within the authorization of the legislature.

It is next urged that the flooding of the appellees' premises was, if anything, no more than a tort for which the State of Arizona is not liable. We do not think this contention can be sustained. The constitution has reference to the interest invaded and not to the particular conduct leading to the invasion. Conduct which would be tortious if perpetrated by one individual on another may be compensable as a taking and damaging when perpetrated by the state upon an individual. Arizona is in accord with the great majority of jurisdictions holding that the flooding of land is compensable under emi-

nent domain provisions. Clausen v. Salt River Valley Water Users' Ass'n, 59 Ariz. 71, 123 P.2d 172; State ex rel. Sullivan v. Carrow, 57 Ariz. 434, 114 P.2d 896.

The state further argues that it should not be held responsible for damages to the appellees because there is no proof that the acts of the state in connection with the ditch caused the loss or damage sustained. The trial court found to the contrary, stating that the ditch "collected and diverted surface waters and discharged them on the plaintiff's property, causing a much greater amount of water to reach plaintiff's property than would have reached it in the absence of the ditch and thereby flooding it." It further found that the flooding was of an "inevitably recurring character." On the whole, these findings are sustained by the evidence. When such is the case, this court will not disturb them. Maricopa County Municipal Water Conservation Dist. No. 1 v. Warford, supra.

It is finally urged that no recovery may be had for injuries to personal property or for injuries to property not belonging to one of the appellees. As to the first, the Constitution, Art. 2, Section 17 prohibits all taking and damaging: *"No private property shall be taken or damaged * * *"*. As to the second, we think appellant is correct. The trial court allow-

ed the appellees White the sum of $655 for damage to customers' clothing in their laundry. Generally, laundrymen, dyers, cleaners and tailors are bailees for hire. 33 Am.Jur. 10, Laundries, Dyers, Dry Cleaners, Pressers and Tailors, Section 10. A bailee for hire is bound to exercise only ordinary care. Railway Express Agency v. Schoen, 70 Ariz. 87, 216 P.2d 420. The evidence establishes that the storm which caused the flooding was unanticipated, that water had not entered White's premises prior to this flooding; nor does the evidence disclose any unusual or improper manner of conducting the business. There is, therefore, nothing in the record to indicate that White failed to exercise that degree of care which a reasonably prudent person would exercise under like circumstances. The payment of damages by White to his customers was without any compulsion or obligation. His status was that of a volunteer without any right to substitution and subrogation. See Mosher v. Conway, 45 Ariz. 463, 46 P.2d 110.

For the foregoing reasons, the judgments are affirmed except as to the appellees Samuel White and Anne White, his wife, and as to them, the judgment is ordered reduced to the sum of $675, and as so reduced affirmed.

UDALL, C. J., and WINDES, PHELPS and JOHNSON, JJ., concur.