572 P.2d 108

**CITY OF YUMA, a Municipal Corporation, Appellant,**

v.

**Ruth LATTIE, Appellee.**

**No. 1 CA–CIV 3019.**

Court of Appeals of Arizona, Division 1.

Oct. 6, 1977.

Rehearing Denied Nov. 15, 1977.

Review Denied Dec. 13, 1977.

---

Gust, Rosenfeld, Divelbess & Henderson by Fred H. Rosenfeld, Phoenix, for appellant.

Westover, Choules, Shadle & Bowen by Ted B. Bowen, Jay R. Irwin, Yuma, for appellee.

## OPINION

EUBANK, Judge.

This is an appeal by the city of Yuma from a jury verdict in favor of the appellee, who brought an inverse eminent domain action for damages to her real property. The damages were the result of street improvements constructed as a part of a special assessment district. Specifically, appellee's claims for damages were for the impairment of her ingress and egress and from the increase in the probability of flooding to her property resulting from a change in the grade of a street.

The facts are that appellee was the owner of Lot 13 and the south half of Lot 14, of the Los Nidos Subdivision of the city of Yuma. This land was annexed into Yuma on February 2, 1954, and subsequently subdivided. The subdivision plat was approved by the City Council of Yuma on May 1,

1956, and recorded on June 26, 1956. All streets and alleys were dedicated to Yuma by the recorded plat, but no grade levels of the streets, alleys or easements were specified.

On November 19, 1959, a building permit was obtained by appellee's predecessor in interest and a house was constructed on the lots. The completed house was slightly higher at foundation level than the abutting street and alley, with drainage running generally away from the property. Appellee's yard was watered by irrigation. Several years after the house was completed, Yuma, as an emergency matter, adopted Ordinance No. 1018 on June 8, 1966, setting the grade of the street abutting appellee's property approximately three feet above the prior grade. This grade was established in preparation for the construction of Street Improvement District No. 53. Other proceedings and actions which were undertaken by Yuma, pursuant to A.R.S. §§ 9–671 to 9–716, led eventually to the construction, assessment, and bonding of the District.

Following the construction of the Improvement District, appellee's home was in a "hole", approximately three feet below the street level in front. In addition, the alley running in back of the house was also raised. The new elevation of the street and alley made ingress and egress difficult. The improvements also caused water to pond in the street, overflow the curb and sidewalk, and then run down appellee's front steps into the front yard. By the time of the trial, such flooding had occurred on one occasion as the result of a rain. The water, however, did not get into the house or carport.

At the trial, the appellee testified that before the improvement the property had a value of $40,000 and after the improvement it had a value of $20,000, resulting in $20,000 damages. Her expert witness appraiser, Harvey Self, testified to estimated damages of $17,500. Yuma put on no valuation testimony, relying instead on the principles of law discussed below. The matter went to the jury, which returned a verdict of $20,000 in appellee's favor. As an element of the trial, the jury was permitted to visit appellee's property and view the claimed damage. Yuma appealed from both the judgment and an order denying a new trial.

Yuma raises four questions for our consideration:

1. Is a determination by a city council sitting as a board of apportionment pursuant to A.R.S. 9–687(F) final and conclusive as to a decision overruling an objection to an assessment based upon the claim that the improvement "as constructed" did not benefit the objector's adjacent property but did in fact damage such property?

2. Is a city liable for damage caused to a person's property due to an improvement being made by the City where the damage results because of a change of grade in the street being improved where the grade existing prior to the improvement was not an officially established grade?

3. May the official grade of a street be established by any conduct other than by action of the city council as expressed by an ordinance, resolution or a motion of the council duly passed upon in open session?

4. Did the Plaintiff below prove any actual damage to the value of her property occasioned by an improvement undertaken by the City?

## I. FINALITY OF A.R.S. § 9–687(F)

The basis of Yuma's first question is A.R.S. § 9–687(F), as amended, which reads:

F. The owners, contractor and all other persons directly interested in the work or in the assessment, who have any objection to the legality of the assessment or to any of the previous proceedings connected therewith, or who claim that the work has not been performed according to the contract, may, prior to the time fixed for the hearing, file a written notice briefly specifying the grounds of their objections. At the time fixed for the hearing or at any time not later than

ten days thereafter to which the hearing may be postponed, the governing body shall hear and pass upon the objections. *The decision of the governing body shall be final and conclusive upon all persons entitled to object as to all errors, informalities and irregularities which the governing body might have remedied or avoided at any time during the progress of the proceedings.* (Emphasis added)

Yuma contends that the determination of the assessment, pursuant to § 9–687(F), against appellee's real property by the Mayor and Council, following a hearing, was a final determination and "not subject to judicial scrutiny by the superior court system *of this State except through a special action in the nature of certiorari.*" In effect, Yuma is arguing that the Council's determination forecloses any claim by appellee for damages resulting from a taking or damaging of appellee's real property. The appellee, within limits, admits the verity of Yuma's contention regarding the assessment determination but argues that her claim is based on inverse eminent domain for damage to her property rather than on the assessment determination. We agree with the appellee.

Yuma is a Charter City. "Its charter is its organic law, which must be 'consistent with, and subject to, the constitution and laws of the state.' Section 2, Article XIII [of the Arizona Constitution]." *Trigg v. City of Yuma*, 59 Ariz. 480, 484, 130 P.2d 59, 61 (1942). No claim is made here by Yuma that any of its charter provisions or ordinances are applicable to the disposition of this matter. Consequently, we must assume that the statutes relating generally to cities are applicable.

All Arizona cities are subject to Article 2, Section 17 of the Arizona Constitution, 1 A.R.S., which provides, in part, that "no private property shall be taken or damaged for public or private use without just compensation having first been made, . . ." A city's general authority to exercise the power of eminent domain is found in A.R.S. § 12–1111. *See Citizen's Utilities Water Co. v. Superior Court*, 108 Ariz. 296, 497 P.2d 55, *cert. denied*, 409 U.S. 1022, 93 S.Ct. 462, 34 L.Ed.2d 314 (1972); *City of Phoenix v. Donofrio*, 99 Ariz. 130, 407 P.2d 91 (1965). A.R.S. § 12–1111(6), in part, authorizes the exercise of eminent domain by a city for: "Roads, streets, and alleys, and all other public uses for the benefit of a . . . city . . . , which is authorized by the legislature." Under A.R.S. § 9–276(A), a city is authorized to exercise the following powers:

A. In addition to the powers already vested in cities by their respective charters and by general law, cities and their governing bodies may:

1. Lay out and establish, regulate the use, open, vacate, alter, widen, extend, grade, pave, plant trees or otherwise improve streets, alleys, avenues, sidewalks, parks and public grounds.

\* \* \* \* \* \*

22. Establish and alter the grade of streets, alleys and sidewalks, and regulate the manner of using the streets and pavements in the city to protect them from injury by vehicles driven thereon. No street or sidewalk grade shall be altered after it has once been established and built unless compensation is made to abutting owners for damages done their property by the change.

23. Make local improvements by special assessments, by special taxation or otherwise, as they shall by ordinance prescribe.

In addition, A.R.S. §§ 9–602, 606 and 622 authorize a city to form a special improvement district for eminent domain purposes where streets are to be created or improved.

■ A city, then, has extensive authority, including the authority to exercise the power of eminent domain, to do every act necessary in order to establish an adequate street and road system within the city. If the city fails to institute an eminent domain action and private property is taken or damaged for public use, Article 2, Section 17 of the Constitution is self-executing and the right to bring an inverse eminent domain action vests in the property owner. *See State v. Hollis*, 93 Ariz. 200, 379 P.2d

750 (1963); *State v. Leeson*, 84 Ariz. 44, 323 P.2d 692 (1958).

■ Turning to the question *sub judice*, Street Improvement District No. 53 was instituted by the council pursuant to A.R.S. §§ 9–671 to 9–716. These statutes make no reference to eminent domain. Additionally, no eminent domain proceedings were authorized by the council in its District Resolution, since apparently no damage to real property was anticipated. Yuma's contention that, as a matter of law, an A.R.S. § 9–687(F), *supra*, determination of assessment bars appellee's inverse eminent domain claim is, we believe, erroneous for several reasons. First, Article 2, Section 17 of the Arizona Constitution, which provides that no private property shall be taken or damaged for public use without just compensation having first been made, in our opinion, overrides any such contention. Second, nothing contained in A.R.S. § 9–687(F) evidences any legislative intent to preclude. or bar an inverse eminent domain action arising out of the creation of a district. Indeed the subsection specifically relates only to "the legality of the assessment or any of the previous proceedings connected therewith", or to work not performed according to the contract; it does not relate to damage resulting to private property arising from the creation and construction of a district. Third, what we have said in regard to § 9–687(F) applies equally to A.R.S. §§ 9–671 to 9–716. Finally, we are cited to no case authority which would directly support Yuma's contention. All of the cases cited related to direct appeals from the assessment determination and are therefore irrelevant to this issue. *See* e. g., *Weitz v. Davis*, 102 Ariz. 40, 424 P.2d 168 (1967); *Town of Peoria v. Hensley*, 26 Ariz. App. 30, 545 P.2d 992 (1976).

## II. OFFICIAL STREET GRADE

Yuma's second and third questions raise issues relating to the "official" street grade: Number (2) questions whether Yuma can be held liable for a change in grade where the City Council had never established a street grade prior to the form-ation of the district, and Number (3) questions whether an "official" grade may be established by conduct other than by action of the City Council.

In commending a negative answer to both questions, Yuma contends:

The general rule with regard to the change of grade of a street caused by action on the part of the governing body is that damages are recoverable if the change of grade causes damages to the property provided that it is a change in the established street grade and not merely a change of grade as such. See *Mosher v. The City of Phoenix*, 39 Ariz. 470, 7 P.2d 622 (1932)

They further contend that the record shows that Yuma did not establish an "official" grade prior to the adoption of the Resolution activating the district in 1966, and therefore *Mosher* precludes any recovery. In support of this contention, Yuma cites *Mosher v. City of Phoenix*, 39 Ariz. 470, 7 P.2d 622 (1932); *In re Forsstrom*, 44 Ariz. 472, 38 P.2d 878 (1934); *Pima County v. Bilby*, 87 Ariz. 366, 351 P.2d 647 (1960); and *State v. Thelberg*, 87 Ariz. 318, 350 P.2d 988 (1960).

Our review of these cases leads us to a different conclusion. The emphasis on "established" or "official" grade based on *Mosher* is misplaced because grade was not an issue there. In *Mosher* the issue was whether a Charter City had the authority to establish an assessment district and exercise eminent domain, under charter authorization, for the purpose of widening Van Buren Street from 16th Street to Central Avenue in Phoenix. Our Supreme Court affirmed the City's authority to exercise the power in that case. The quotation relied upon by Yuma from *Mosher* is from 20 Corpus Juris, page 694, and was cited in affirming the trial court's rejection of valuation evidence—the cost of sidewalks to Mosher. The quotation reads in part:

Under provisions like this [art. II, § 17, Ariz.Const.], it is generally held that a change in the established grade of a street, which injuriously affects the value of adjoining property, is "damage." 20

C.J., p. 694, and notes. The damage is to the easement of ingress and egress. [39 Ariz. at 482, 7 P.2d at 627.]

When the same quotation was advanced by petitioners in *In re Forsstrom*, 44 Ariz. 472, 493–94, 38 P.2d 878, 887 (1934) as authority, our Supreme Court, after citing the quotation, said:

> But in that case [*Mosher*] the question as to the meaning of the word "taking", as found in our statutes and Constitution, and the true reason for the rule in regard to the changing of street grades, was not presented and argued to us, and therefore was not thoroughly considered by us. We are of the opinion, after a careful examination and review of all the authorities, that the changing of a street grade which lessens the enjoyment of the easement of ingress and egress is within the true meaning of the constitutional provision a taking of the property, and anything we have said in *Mosher v. City of Phoenix, supra*, to the contrary is expressly overruled.

In turn, one of the bases of the decision in *In re Forrstrom* was overruled by our Court in *State v. Thelberg*, 87 Ariz. 318, 350 P.2d 988 (1960). There the Court said:

> ▪ An examination of many authorities from various jurisdictions convinces us that the weight of authority in the United States is to the effect that either the destruction or the material impairment of the access easement of an abutting property owner to such highway is compensable. We therefore overrule the principle laid down in *In re Forsstrom* and *Grande v. Casson* [50 Ariz. 397, 72 P.2d 676], *supra*, which declared the noncompensability of an abutting property owner for the destruction or substantial impairment of his right of access to such highway. We also reject the reasoning upon which the rule rests i. e., that there is a presumption of payment. The rule to the contrary, supported by the weight of authority, is based upon the fact that an abutting property owner to a highway has an easement of ingress and egress to and from his property which constitutes a property right. Our State Constitution, Art. 2 § 17, A.R.S., prohibits the taking or damaging of private property for public use without just compensation. It follows that the State can neither take nor damage said easement of ingress or egress of an abutting property owner without just compensation. [87 Ariz. at 324, 350 P.2d at 991.]

The *Thelberg* rule was strongly affirmed by the Court in *Pima County v. Bilby*, 87 Ariz. 366, 351 P.2d 647 (1960). Cf. *Schock v. Jocka*, 105 Ariz. 131, 460 P.2d 185 (1969).

▪ Consequently, the rule of law applicable for change of grade is found in *Thelberg, supra*. We have been cited to no Arizona authority that requires a grade to be "officially" "established" as a prerequisite to just compensation where a city damages a property owner's ingress or egress. As we have shown, Yuma's cited authorities do not support such a contention.

The two questions raised by Yuma are therefore largely irrelevant, since our reading of the cases requires that just compensation be paid by a city, regardless of the establishment of a road grade line, where the easement of ingress or egress of a property owner is substantially impaired. This right to compensation is limited only by the exercise of a city's police power, which is not an issue here. *See State ex rel. Herman v. Schaffer*, 105 Ariz. 478, 467 P.2d 66 (1970); *City of Phoenix v. Wade*, 5 Ariz. App. 505, 428 P.2d 450 (1967).

We hold that the evidence was sufficient to establish a substantial impairment of appellee's easement of ingress and egress.

### III. FLOOD DAMAGE

▪ As a part of question (2), Yuma argues that it should not be liable for flood damage on authority of *City of Globe v. Moreno*, 23 Ariz. 124, 202 P. 230 (1921). The *Moreno* case is primarily a defective pleading case. The action was brought on negligence theory by the property owner against Globe for damage based on Globe's duty "to provide sufficient drains and outlets for the escape from her property of storm and flood waters that might be de-

posited thereon." No negligent conduct in constructing the road improvement was alleged, only Globe's failure to act, or only an act of "omission" by Globe was alleged. The Supreme Court reversed the judgment in favor of the property owner on this sole basis. In arriving at its conclusion, our Court, by dicta, stated the damage rule applicable in a flooding case, was as follows:

The plaintiff seems to rely upon *City of Globe v. Shute*, 22 Ariz. 280, 196 P. 1024, and *City of Tucson v. Dunseath*, 15 Ariz. 355, 139 P. 177, as supporting her claim that the defendant city in this case owed the duty to drain her premises.

In the *Shute* case we held that the city was liable for damages caused by defectively constructed drain built by the city to divert water of a natural stream because it had not exercised reasonable care and diligence to see that the drain was of sufficient size to carry the water that might reasonably have been anticipated. In the *Dunseath* case the city was held liable in damages because it had collected surface water in large quantities in a kind of reservoir or pond upon the street, which was released by the breaking or washing away of the obstruction and the water precipitated in greater volume and force on to the property of *Dunseath* than it would otherwise have flowed. As McQuillin on Municipal Corporations, section 2711 says:

"One rule in regard to surface water may be said to be well settled. It is an exception to the general rule of nonliability, in that municipalities are held liable where they collect surface water by an artificial channel or in large quantities, and pour it, in a body, upon the land of a private person to his injury."

This rule, announced by McQuillin and followed in the *Dunseath* case, has been adopted by most of the courts. [23 Ariz. at 131, 202 P. at 232]

This is still good law. *See State v. Leeson*, 84 Ariz. 44, 323 P.2d 692 (1958). The *Dunseath* damage is similar to that established here by appellee. The statement in the *Moreno* quotation, *supra*, relating to dam-

age on account of the establishment of the initial grade, must be limited by later cases directly addressing the issue, such as *Leeson* and *Thelberg*, and read within the limitation imposed by a city's reasonable and rational use of police powers. *See City of Phoenix v. Wade, supra.*

This action is one in inverse eminent domain, not negligence, and the issues on that theory were properly raised and tried. *Leeson, supra*, states the applicable rule for flooding as follows:

■ It is next urged that the flooding of the appellees' premises was, if anything, no more than a tort for which the State of Arizona is not liable. We do not think this contention can be sustained. The constitution has reference to the interest invaded and not to the particular conduct leading to the invasion. Conduct which would be tortious if perpetrated by one individual on another may be compensable as a taking and damaging when perpetrated by the state upon an individual. Arizona is in accord with the great majority of jurisdictions holding that the flooding of land is compensable under eminent domain provisions. *Clausen v. Salt River Valley Water Users' Ass'n*, 59 Ariz. 71, 123 P.2d 172; *State ex rel. Sullivan v. Carrow*, 57 Ariz. 434, 114 P.2d 896. [84 Ariz. at 50, 323 P.2d at 696].

This was the basis on which the flooding issue went to the jury.

In our opinion the evidence supports flood damage to appellee's real property.

## IV. DAMAGES

■ In its final question, Yuma contends that "appellee failed to prove that her property had been damaged by the street improvement, or at least certainly did not prove damages anywhere near in the neighborhood of $20,000."

This contention has little substance. The only evidence of damage was offered by the appellee and her expert witness using the before and after method of computing value which was approved in *Mosher* and *Bilby, supra*. The jury agreed with them. In

addition, the jury viewed the real property and saw for themselves the property and the claimed damage. A jury view is demonstrative evidence for the jury. *McCormick on Evidence* § 183 (1954); 4 Wigmore, Evidence § 1168; Udall, *Arizona Law on Evidence* § 133 (1960). Finally, the verdict was for the amount of the damage testified to by the appellee and was therefore based on admissible evidence. *Board of Regents v. Cannon*, 86 Ariz. 176, 342 P.2d 207 (1959). Under such a record, the jury verdict must be sustained.

The judgment is affirmed.

WREN, Acting P. J., and DONOFRIO, J., concur.