302 P.3d 640

**CITY OF PHOENIX, a municipal corporation, Plaintiff/Appellee,**

v.

**John E. GARRETSON, as Trustee of The Emery E. Oldaker Trust, dated July 30, 1966; John E. Garretson, an unmarried man, Defendant/Appellant.**

No. 1 CA–CV 10–0620.

Court of Appeals of Arizona, Division 1, Department C.

May 7, 2013.

116

Ayers & Brown, P.C. by Charles K. Ayers and Stephanie Heizer, Phoenix, Attorneys for Plaintiff/Appellee.

Zeitlin & Zeitlin P.C. by Dale S. Zeitlin, Phoenix, Attorney for Defendant/Appellant.

## OPINION

BROWN, Judge.

¶1 John Garretson, as Trustee of the Emery E. Oldaker Trust and individually (collectively "Garretson"), appeals the trial court's decision that as a matter of law Garretson suffered no compensable damages for loss of access under the Arizona Constitution stemming from the City of Phoenix's ("the City") construction of a light rail project adjacent to his property. Because Garretson has shown the existence of genuine issues of material fact relating to whether the City's actions materially impaired his right of access and thereby diminished the value of his property, we vacate the court's ruling and remand for further proceedings.[1]

## BACKGROUND

¶2 Garretson owns a parcel of real property ("the Property") in downtown Phoenix, consisting of roughly 36,000 square feet and currently used as a commercial parking lot. The Property abuts Jefferson Street ("Jefferson") to the north, 1st Street to the east, and Madison Street to the south.

¶3 In February 2005, the City offered to purchase a temporary construction easement ("TCE") on 492 square feet of the Property for use in constructing the Central/East Valley Light Rail ("the Project"). Garretson later agreed the City could use the Property during construction of the Project and that compensation would be determined through a condemnation proceeding if the parties could not agree on the amount to be paid.

¶4 As part of the Project, the City placed rail tracks on the south side of Jefferson between the one-way eastbound traffic lanes and the Property. Upon completion of the Project, the City constructed a concrete barrier along the south side of the light rail tracks, which permanently blocked two driveways on the Property that had allowed access to Jefferson. Garretson, however, still retained access to the Property from Madison Street.[2]

¶5 Shortly after completing the Project, the City filed a complaint in eminent domain to determine the just compensation to be paid to Garretson for "taking of the [TCE] and property rights necessary for the stated public purpose." In his answer, Garretson claimed the right to be compensated for the loss of the Property's access to Jefferson.[3] The City moved for partial summary judgment, seeking a ruling that Garretson was not entitled to compensation for loss of access to Jefferson. The City argued it had

---

1. We address two other issues raised by Garretson in a separate memorandum decision filed herewith.

2. The City argues on appeal that after the trial court issued its decision, Garretson applied for and constructed a new driveway to access the Property from 1st Street. The City also asserts that Garretson had access to the Property from Central Avenue from an alleyway. Assuming without deciding that alleged access to 1st Street at the time this litigation began may be properly considered, see Arizona Revised Statutes ("A.R.S.") section 12–1123(A) (2013) (stating that the right to damages accrues at the date of the summons), and that the alleyway provided access to the Property from Central Avenue, these facts

may be relevant insofar as they relate to establishing the fair market value of the Property after construction of the Project. See infra ¶¶ 17, 34. But for purposes of reviewing the motion for summary judgment currently before us, the Property has no established access to 1st Street and, based on Garretson's declaration, no access to Central Avenue from the alleyway.

3. The City filed the eminent domain action requesting a determination of just compensation for the TCE. Given that the City has raised no issue as to whether Garretson was required to file a counterclaim for inverse condemnation, we construe the City's complaint as encompassing the issue of impaired access to Jefferson.

exercised its authority to control access to roadways as part of its police power and any damage to the Property was therefore non-compensable. Alternatively, the City argued that because Garretson retained access to the Property through other routes, his access had not been substantially impaired in a manner justifying compensation.

¶ 6 Garretson countered that he was entitled to present a jury with evidence of "severance damages" for his loss of access to Jefferson, even though the Property had other means of access.[4] Specifically, Garretson argued he was entitled to seek damages because the Project had destroyed his access to Jefferson, relying in part on an appraisal of the Property indicating a decrease in value of approximately $1.9 million as a result of that loss of access. Thus, Garretson argued issues of fact remained as to the extent of damages, requiring determination by a jury.

¶ 7 In granting the City's motion, the trial court framed the issue as "whether the light rail transit line with its attendant traffic controls 'substantially interfered' with Garretson's access." Citing *City of Phoenix v. Wade*, 5 Ariz.App. 505, 509, 428 P.2d 450, 454 (1967), the trial court explained that a property owner may not receive compensation for loss of access if the owner retains "free and convenient access" to the property and its improvements. The court then concluded that because Garretson had alternative ac-

cess to the Property, he was not entitled to "severance damages."

¶ 8 Based on the trial court's rulings, the parties entered into a stipulated judgment against the City in the amount of $7,134, "as and for full settlement for the [TCE] over the Subject Property and other damages, if any, arising from this action." The judgment provided that Garretson reserved the right to appeal, which he did in a timely fashion. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(A)(1)(2013).[5]

**DISCUSSION**

¶ 9 Summary judgment should be granted "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).[6] In reviewing a motion for summary judgment, we determine de novo whether any genuine issue of material fact exists and whether the trial court properly applied the law. *Ochser v. Funk*, 228 Ariz. 365, 369, ¶ 11, 266 P.3d 1061, 1065 (2011). We view the facts and the inferences to be drawn from those facts in the light most favorable to the party against whom judgment was entered. *Id.*

¶ 10 Garretson argues that because the City "destroyed" his access rights to Jefferson, he is entitled to compensation under the Arizona Constitution as a matter of law.[7] The City counters that construction of

4. Both the parties and the trial court used the term "severance damages" in describing the compensation Garretson seeks for loss of access to Jefferson. Severance damages are only available, however, when the government condemns a portion of an aggrieved party's property. *See State ex rel. Ordway v. Buchanan*, 154 Ariz. 159, 164, 741 P.2d 292, 297 (1987) (recognizing the principle that a property owner may be entitled to compensation for land not condemned by the government if such land is part of a larger parcel); A.R.S. § 12–1122(A) (2013) (providing that in the context of partial taking of property, the court or jury will determine "the damages that will accrue to the portion not sought to be condemned"). Even so, the mistaken reference to severance damages is understandable given the lack of clarity of the law in this area. *See Rayburn v. State ex rel. Willey*, 93 Ariz. 54, 57, 378 P.2d 496, 498 (1963) (explaining that the final clause of A.R.S. § 12–1122(A), which provides for determination of damages based on construction of a public improvement, was "lumped in

the same paragraph" as severance damages but that "does not change any substantive rule of law as to what damages are compensable."). Consistent with the supreme court's explanation in *Rayburn*, because there has been no permanent physical invasion of the Property, we construe Garretson's request for compensation as a request for damages under Article 2, Section 17 of the Arizona Constitution.

5. Absent material revisions after the relevant date, we cite a statute's current version.

6. Effective January 1, 2013, Rule 56(c)(1) was renumbered as Rule 56(a) as part of a non-substantive reorganization of Rule 56. *See* Ariz. R. Civ. P. 56(h) cmt. Thus, we cite the version currently in effect. *See* Ariz. R. Civ. P. 81.

7. Garretson did not file a cross-motion for summary judgment. Thus, we do not address whether Garretson would be entitled to judgment as a

the barrier adjacent to the Property was a valid exercise of its police power and therefore no compensation is warranted. Alternatively, the City asserts that because Garretson continues to have "non-circuitous" access to other streets, as a matter of law there has been no substantial impairment and thus no constitutional right to damages. We disagree, at least in part, with both parties' assertions. Instead, we hold that when the government eliminates a property owner's established access to an abutting street and the owner retains access from another street, the owner is not necessarily foreclosed from obtaining compensation for damages to the property under the Arizona Constitution. To support such a claim, the owner must prove access to the abutting street has either been destroyed or substantially impaired and such destruction or impairment has reduced the value of the property. *See State ex rel. Morrison v. Thelberg,* 87 Ariz. 318, 325, 350 P.2d 988, 992 (1960).

¶ 11 Municipalities in Arizona have broad authority to exercise the power of eminent domain under A.R.S. § 12–1111 (2013), subject to Article 2, Section 17 of the Arizona Constitution, which provides that "[n]o private property shall be taken or damaged for public or private use without just compensation.[.]" *See City of Yuma v. Lattie,* 117 Ariz. 280, 283, 572 P.2d 108, 111 (App. 1977). Thus, a city or town has extensive authority to take actions necessary to establish an adequate transportation system within its boundaries. *Id.* If a municipality fails to institute an eminent domain action and private property is taken or damaged for public use, "the right to bring an inverse eminent domain action vests in the property owner." *Id.*

¶ 12 As evidenced by the parties' divergent views on the legal significance of Garretson's loss of access, Arizona's jurisprudence addressing a property owner's right to receive compensation for damage arising from restriction of ingress and egress is not easily distilled. And the scenario presented here— elimination of established access to a major thoroughfare in the heart of a downtown commercial district—involves unique factors not previously addressed in Arizona. Nonetheless, we turn to several decisions issued by our supreme court during the last century for guidance in resolving whether the trial court erred in determining that Garretson's claim fails as a matter of law.

### A. Case History Regarding Impairment of Access

¶ 13 Arizona's jurisprudence regarding the "damages clause" of Article 2, Section 17 of the Arizona Constitution, as applied to a property owner's right of access, can be traced to *Mosher v. City of Phoenix,* 39 Ariz. 470, 7 P.2d 622 (1932). In that case, the City of Phoenix condemned abutting property to carry out a road-widening project. *Id.* at 472, 7 P.2d at 623. The City filed eminent domain proceedings against all owners whose property was condemned to determine the amount of compensation, if any. *Id.* Mosher, one of the property owners, argued he was entitled to compensation arising from the destruction of a sidewalk he built on his property prior to the project. *Id.* at 482, 7 P.2d at 626–27. Citing the damages clause, our supreme court noted that "it is generally held that a change in the established grade of a street, which injuriously affects the value of adjoining property, is damage. The damage is to the easement of ingress and egress." *Id.* at 482, 7 P.2d at 627 (internal quotations omitted). By analogy, the court found that "if through the destruction of a sidewalk or pavement on a street already established the easement of ingress or egress is injured, damages may be recovered therefor, and the measure thereof is the same as in a change of grade." *Id.* at 483, 7 P.2d at 627.

¶ 14 Shortly after deciding *Mosher,* our supreme court again sought to clarify the application of Article 2, Section 17 in *In re Forsstrom,* 44 Ariz. 472, 38 P.2d 878 (1934). There, the City of Tucson condemned property along two streets which made the owners' ingress and egress more difficult because of a change of grade. *Id.* at 476, 38 P.2d at 880–81. The court found the owners' claim of harm to their access did not fall within the

matter of law on the issue of substantial impairment; we consider only whether issues of mate-

rial fact exist that preclude summary judgment in favor of the City. *See* Ariz. R. Civ. P. 56(a).

scope of the damages clause but rather was "within the true meaning of the constitutional provision a *taking* of the property." *Id.* at 494, 38 P.2d at 887 (emphasis added). Partially overruling *Mosher,* the court held that absent an express legislative provision for ascertaining damage arising from a change in grade, the right to compensation was not self-executing. *Id.* at 492, 38 P.2d at 886–87. The court also concluded that payment of just compensation did not include "the changing of street grades," reasoning that when the streets were "first laid out, compensation was presumably made to cover, not only the original grades, but any changes which might at a later time be made therein." *Id.* at 489–92, 38 P.2d at 885–87. The court qualified its holding, however, by recognizing that the legislature had adopted a specific statute requiring municipalities to compensate property owners for changes in the grade of a street or sidewalk. *Id.* at 492–94, 38 P.2d at 887. Thus, the court held that the statute "does provide a method whereby the damage caused to abutting property owners on a street through the taking of any portion of their right to ingress and egress thereto may be assessed[.]" *Id.* at 494, 38 P.2d at 887.

¶ 15 The next case to address application of the damages clause was *State ex rel. Sullivan v. Carrow,* 57 Ariz. 434, 114 P.2d 896 (1941). In that case, prior to construction of a highway, the State had assured the defendant property owners the highway would exist as constructed indefinitely. *Id.* at 436–37, 114 P.2d at 897. Relying on the State's representations, the defendants constructed a recreational facility abutting the highway. *Id.* at 437, 114 P.2d at 897. The State later decided to construct a new portion of the highway that directed traffic away from the defendants' property. *Id.* Access to defendants' recreational area remained intact via the old highway, but the defendants argued it was more difficult after the change. *Id.* In assessing what damages the defendants were entitled to recover, the supreme court emphasized that "no man can have a vested right in having traffic routed by his place of business." *Id.* at 440, 114 P.2d at 898. The court also distinguished *Forsstrom,* pointing out that "[i]n the present case ... the increased difficulty of access was not caused by

a change in the grade on a right of way already established, but by the taking of a new right of way." *Id.* at 443, 114 P.2d at 899. The court concluded the "defendants were entitled to such damages as were caused by the increased difficulty of access to their premises." *Id.*

¶ 16 In 1960, our supreme court rendered its decision in *Thelberg,* 87 Ariz. 318, 350 P.2d 988. In that case, the defendant property owners had direct access to both directions of travel on an abutting highway from their property. *Id.* at 321, 350 P.2d at 989. After the State constructed a new controlled-access highway, the property owners no longer had direct access to the highway and could only reach it by traveling approximately 1500 feet on a frontage road. *Id.* at 322, 350 P.2d at 990. To construct the frontage road, the State condemned a small portion of the owners' property. *Id.* The defendants claimed, *inter alia,* they were entitled to damages for the loss of direct access to the new controlled-access highway. *Id.* at 322–23, 350 P.2d at 990.

¶ 17 In holding that the property owners were entitled to seek damages, the court rejected *Forsstrom*'s presumption of payment rationale and concluded that "either the destruction or the material impairment of the access easement of an abutting property owner to such highway is compensable." *Id.* at 323–24, 350 P.2d at 991. The court reasoned that "an abutting property owner to a highway has an easement of ingress and egress to and from his property which constitutes a property right." *Id.* at 324, 350 P.2d at 991. Based on that right, and the Arizona Constitution, the court found "that the State can neither take nor damage said easement of ingress or egress of an abutting property owner without just compensation." *Id.* In determining that damages were appropriate, the court emphasized that by converting the roadway to a controlled-access highway, the State had negatively impacted the owners' ingress and egress to a preexisting roadway. *Id.* at 325, 318 P.2d at 992. With respect to the amount of damages the property owners might be entitled to, the court pointed out that "[o]ther means of access such as frontage roads ... may be taken into consider-

ation in determining the amount which would be just under the circumstances. Other means of access may mitigate damages, but does not constitute a defense to the action[.]" *Id.* at 325, 350 P.2d at 992 (internal quotations and citations omitted).

¶ 18 Shortly after *Thelberg*, the supreme court issued its opinion in *Pima Cnty. v. Bilby*, 87 Ariz. 366, 351 P.2d 647 (1960). In *Bilby*, a property owner sued Pima County after it altered the grade of the street abutting the owner's property. *Id.* at 369–70, 351 P.2d at 649. Concluding that such action by the county was compensable under the damages clause, the court reasoned that "it is generally held that á change in the established grade of a street, which injuriously affects the value of adjoining property, is 'damage.' The damage is to the easement of ingress and egress." *Id.* at 371, 351 P.2d at 650 (quoting *Mosher*, 39 Ariz. at 482, 7 P.2d at 627). The court explained further:

> [W]hen the means of ingress and egress of premises abutting upon a public street to and from the street are physically obstructed by the manner in which the street is used, altered, or improved under legislative authority, whether the new use is or is not a legitimate street use, or whether the abutter or the public owns the fee, the owner of such premises is entitled to compensation so far as such impairment of access depreciates the market value of his [or her] property.

*Bilby*, 87 Ariz. at 372, 351 P.2d at 650 (citation omitted).

¶ 19 Notwithstanding its determination that the county's action affected the owner's ingress and egress, the court explained that the owner bore the burden of demonstrating that such impairment constituted compensable damage under Article 2, Section 17 of the Arizona Constitution:

> Damages awarded the abutting landowner for the destruction or impairment of access therefore is based, *not upon the value of the right of access to the highway,* but rather upon the difference in the value of the remaining property before and after the access thereto has been destroyed or impaired.

*Bilby*, 87 Ariz. at 373, 351 P.2d at 651 (quoting *Thelberg*, 87 Ariz. at 325, 350 P.2d at 992). Thus, the court's opinion makes clear that an owner whose property is affected may not be guaranteed compensation. *See Bilby*, 87 Ariz. at 373, 351 P.2d at 651. ("We hold that plaintiff herein has a right of action for damages measured by the difference, *if any,* in the market value of his land before and after[.]" (emphasis added)).

¶ 20 Our supreme court again addressed the application of the damages clause in the context of controlled-access highways in *State ex rel. Herman v. Wilson*, 103 Ariz. 194, 438 P.2d 760 (1968). In that case, the defendants owned a parcel of property with direct access to an abutting highway. *Id.* at 196, 438 P.2d at 761. The State converted the roadway into a controlled-access highway, eliminating the defendants' direct access thereto. *Id.* at 196, 438 P.2d at 762. In order for travelers to reach the defendants' property after the change, it was necessary to travel an additional 3,000 to 4,000 feet. *Id.* At trial, the owners sought to introduce evidence that conversion to a controlled-access highway caused greater difficulty for passing vehicles to reach the property. *Id.* at 196–97, 438 P.2d at 762–63. The State sought to preclude such testimony, asserting that the owners had no right to have traffic pass in front of their property. *Id.*

¶ 21 Rejecting the State's argument, the court reasoned that "[w]hile it is to be acknowledged that an abutting owner does not have the right to insist that traffic pass over the highway in front of his property undiverted and unobstructed, this does not mean that if traffic is using the highway an abutting property owner may not profit from its flow." *Id.* at 197, 438 P.2d at 763 (internal quotations and citations omitted). Furthermore, in concluding that the owner's testimony about the diminution in value of the property was appropriate, the court stated that the testimony was not "offered to prove the amount of [her] damages but to establish that [she was] damaged." *Id.*

¶ 22 Chief Justice McFarland dissented, arguing that "the question of compensation for impaired access, when applied to the new type of high-speed limited-access highways

now being built" needed reevaluation. *Id.* at 200, 438 P.2d at 766 (McFarland, J., dissenting). According to the dissent, the majority erred in considering the loss of traffic flow as a compensable element of damages. *Id.* at 203, 438 P.2d at 769. Applying the language from *Thelberg* and cases from other jurisdictions, the dissent concluded that "the measure of damages, where access is taken or impaired, is that part of the difference in the before and after market values of the remaining property, which is due to the taking of, or injury to the right of access, not including any damages caused by non-compensable factors." *Id.*

¶ 23 A decade after *Thelberg* and two years after *Wilson,* in an opinion authored by Justice McFarland, the supreme court reevaluated the issue of a property owner's right to access an abutting controlled-access highway in *State ex. rel. Herman v. Schaffer,* 105 Ariz. 478, 467 P.2d 66 (1970). In *Schaffer,* the State filed an action in eminent domain against multiple property owners to determine what damages, if any, arose from the construction of Interstate 10 ("I–10"). *Id.* at 479–80, 467 P.2d at 67–68. The property owners argued that before construction of I–10, they had direct access to the abutting highway in both directions. *Id.* at 479, 467 P.2d at 67. After construction, however, the owners no longer had direct access and could access I–10 only by a frontage road. *Id.* The State took the position that "controlling direct access to an interstate highway is an exercise of its police power, not eminent domain, and is not a taking of property so as to be compensable." *Id.* at 480, 467 P.2d at 68.

¶ 24 Rejecting the owners' argument that they were entitled to compensation under the Arizona Constitution, the supreme court determined that "[d]irect access to a highway is not a private property right within" the damages clause. *Id.* at 481, 467 P.2d at 69. In reaching that conclusion, the court repeated-

ly emphasized the unique character of controlled-access highways:

A limited-access highway ... is not an ordinary highway but an entirely new concept in highways which has made its appearance in recent years.... To bring this about, it is necessary that there be limited access to the highway, thereby eliminating danger of accidents and also affording economic advantages which would best serve the public interests.

*Id.* at 480, 467 P.2d at 68. Thus, in light of the special circumstances presented by controlled-access highways, the court held that a property owner's right to compensation is determined by whether "the ingress and egress after conversion of the highway [is] 'unreasonably circuitous.'" *Id.* at 485, 467 P.2d at 73. The court also distinguished *Wilson* by emphasizing that the property at issue in *Schaffer* maintained access to the highway via a frontage road. *Id.* at 484, 467 P.2d at 72. Notwithstanding the court's analysis of the standard for evaluating compensation for reduced access to controlled-access highways, the court concluded as a matter of law that the property owners in *Schaffer* were entitled to compensation because the State breached its earlier agreement to install and maintain crossovers to benefit abutting property owners. *Id.* at 486–87, 467 P.2d at 74–75.

¶ 25 In sum, the foregoing cases demonstrate that Arizona courts have broadly applied the damages clause to compensate landowners for governmental action that materially or substantially impairs the right of ingress and egress.[8] The common thread is that the government may not completely remove or substantially impair a property's existing access to an abutting roadway without providing just compensation to the owner. *See, e.g., Schaffer,* 105 Ariz. at 481, 467 P.2d at 69 (recognizing that "there is gener-

---

8. This synthesized legal standard is consistent with our legislature's adoption of A.R.S. § 9–276 (2013), which recognizes the broad powers of a municipality to regulate the grade and location of streets and sidewalks, but also provides that "[n]o street or sidewalk grade shall be altered after [the same] has once been established and built unless compensation be made to abutting owners for damages done to their property by

such change." *See Forsstrom,* 44 Ariz. at 493, 38 P.2d at 887 ("The Legislature has therefore expressly provided that, in case a municipality desires to take any part of the right of access to a lot, after a grade has once been established, it must pay such additional damages as may have accrued to the abutting property owner by reason of such additional taking.").

ally more agreement that compensation is due where the limitation amounts to a complete destruction of the abutter's practical access."); *Bilby*, 87 Ariz. at 370–71, 351 P.2d at 649–50 (noting that "an abutting property owner to a highway has an easement of ingress and egress to and from his property which constitutes a property right," and that the right cannot be taken or damaged without just compensation); *Thelberg*, 87 Ariz. at 324, 350 P.2d at 991 ("[E]ither the destruction or the material impairment of the access easement of an abutting property owner to such highway is compensable.").[9]

### B. Exercise of Police Power; Unreasonably Circuitous

¶ 26 The City argues Garretson is not entitled to damages as a matter of law because construction of the barrier in front of his property was a proper exercise of the City's police power and therefore noncompensable. *See Wade*, 5 Ariz.App. at 508, 428 P.2d at 453; *Lattie*, 117 Ariz. at 285, 572 P.2d at 113 (recognizing that the right to compensation for loss of access is "limited only by the exercise of a city's police power."). Even assuming, however, the City has adequately proven that its construction of the barrier fulfilled an acceptable traffic-safety purpose, that does not mean the City has an unqualified right to destroy or substantially impair access without paying just compensation.

¶ 27 We addressed the police power "exception" in *Wade*, where the City of Phoenix condemned a small strip of land on the owner's property for a road-widening project. 5 Ariz.App. at 507, 428 P.2d at 452. As part of the project, the City painted new lane lines, erected "no parking" signs, and installed new traffic signals. *Id.* After the changes, the property owners' driveway was significantly shorter, and "[i]n order for a vehicle in the carport to go from the carport to [the abutting street] it [was] necessary that the vehi-

cle be backed out into the street." *Id.* at 507–08, 428 P.2d at 452–53.

¶ 28 In rejecting the property owners' claim for damages arising from the project, we held that "[w]hen the city makes a reasonable and rational exercise of its police power in the control of traffic upon its streets, any damage resulting is non-compensable." *Id.* at 508, 428 P.2d at 453. We limited that holding, however, by recognizing that "either the [d]estruction or [m]aterial impairment of the access easement of an abutting owner is compensable." *Id.* at 508–09, 428 P.2d at 453–54. But we explained further that a "landowner [does not have] a right of access to his land at all points in the boundary between it and the highway." *Id.* at 509, 428 P.2d at 454.

¶ 29 The unique scenario presented in this case—complete elimination of access from an abutting street—differs significantly from those situations when property owners have been denied compensation based on street modifications that did not substantially impair access. *See generally Rayburn*, 93 Ariz. at 57, 378 P.2d at 498–99 (identifying various appropriate exercises of police power, such as conversion from two-way to one-way traffic or installation of a traffic divider or median); *see also* 2A Nichols on Eminent Domain, ch. 6, § 6.02[8][b] (Matthew Bender, 3d ed.) (collecting cases and indicating various road modifications found acceptable under the police power). Thus, while we recognize that *Wade* and other cases have described limited situations of noncompensable damages under the police power, because none of those cases present facts similar to those here, the City is not entitled to judgment as a matter of law based on an alleged exercise of its police power.

¶ 30 Alternatively, the City argues that Garretson is not entitled to damages because his property enjoys other access to the sys-

---

9. Our construction of the damages clause contained in Article 2, Section 17 of the Arizona Constitution is consistent with other states' interpretations of similar clauses. *See, e.g., State Dep't of Highways, Div. of Highways, State of Colorado v. Interstate–Denver West*, 791 P.2d 1119 (Colo.1990); *Keiffer v. King Cnty.*, 89 Wash.2d 369, 572 P.2d 408 (1977); *Brumer v. Los Angeles Cnty. Metro. Transp. Auth.*, 36 Cal.

App.4th 1738, 43 Cal.Rptr.2d 314 (1995); *see also* 2A Nichols on Eminent Domain, ch. 6, § 6.02[14] (Matthew Bender, 3d ed.) (noting that "[f]ederal, state, or local damage clauses may offer greater protections and definitions of compensable interests than do takings clauses" and that "the right to recovery under the Damages Clause may be far more extensive than the corresponding right under the Takings Clause.").

tem of public streets. To support that contention, the City relies primarily on *Schaffer*, *Wade*, and *Tucson Title Ins. Co. v. State ex rel. Herman*, 15 Ariz.App. 452, 489 P.2d 299 (1971). We find those cases distinguishable.

¶ 31 The City relies on *Schaffer* for the argument that Garretson is not entitled to damages because remaining access to his property is not "unreasonably circuitous." *See Schaffer*, 105 Ariz. at 485–86, 467 P.2d at 73–74. As already discussed, however, the only relevant issue addressed in *Schaffer* related to claimed damages in the context of controlled-access highways. *Id.* (emphasizing that controlled-access highways are a "new concept, which was not fully recognized in our previous decisions") (quoting *Brock v. State Highway Comm'n*, 195 Kan. 361, 404 P.2d 934, 939 (1965)). Thus, while we agree that the unreasonable-circuity test set forth in *Schaffer* remains valid in ascertaining whether access to controlled-access highways has been substantially impaired, and possibly in other contexts, we do not believe our supreme court intended that test would apply in all instances. Were that the case, *Schaffer*'s holding would subsume all other Arizona case law related to the deprivation of access to an abutting roadway. Nothing in *Schaffer* suggests the court intended such a sweeping result. Moreover, *Schaffer* did not hold, or even suggest, that the issue of whether access is unreasonably circuitous should be determined as a matter of law when direct access to an abutting street is eliminated by the government. Thus, the City's reliance on the unreasonable-circuity standard for evaluating Garretson's lost access to Jefferson is misplaced.

¶ 32 The City relies on *Wade* for the assertion that because Garretson retained access to his property via alternative routes, he is not entitled to compensation for his loss of access to Jefferson. According to the City, *Wade* held that a property owner abutting on two or more streets "does not have a right of access to a *particular* street." Our reading of *Wade*, however, reveals no such holding. To the contrary, *Wade* specifically pointed out that the aggrieved property owners did "not claim that they [had] been totally deprived of access to [the abutting street]." 5

Ariz.App. at 509, 428 P.2d at 454. And the court made that observation after stating: "Owners of property abutting a street or highway cannot, without just compensation, be deprived of all access by public authorities." *Id.* Moreover, *Wade* is distinguishable because the property owner lost a single access point to the abutting roadway, not all access points. *Id.* We are not persuaded by the City's interpretation and application of *Wade*.

¶ 33 Finally, the City relies on *Tucson Title*. That case involved construction of a controlled-access highway, which required the State to acquire a 17–acre strip that was part of a 295–acre parcel owned by the appellants. *Id.* at 453, 489 P.2d at 300. As a result of the new highway, a "desert road" that crossed a corner of the appellants' property no longer extended farther than the western edge of the property, but the appellants retained access to that road as well as a developed road that would cross under and have access to the new highway. *Id.* at 453, 456, 489 P.2d at 300, 303. A jury awarded compensation for the taking of the strip but denied severance damages. *Id.* at 453, 489 P.2d at 300. On appeal, this court rejected the appellants' argument that the trial court improperly denied their requested jury instruction, which sought severance damages for "any impairment" of access to the desert road caused by construction of the highway. *Id.* at 455–57, 489 P.2d at 302–04. We determined, "considering the facts of the case," that the trial court did not err in denying the requested jury instruction because the developed road was not "unreasonably circuitous" and there was no "substantial impairment" of access. *Id.* at 456–57, 489 P.2d at 303–04. Unlike Garretson, the property owners in *Tucson Title* were not deprived of access to an abutting roadway. *See id.* at 456, 489 P.2d at 303. Thus, *Tucson Title* is inapposite.

¶ 34 Contrary to the City's assertion, no reported decision in Arizona has concluded as a matter of law that a property owner is precluded from seeking compensation when the government destroys existing access to an abutting road. In fact, the court in *Bilby* specifically noted that "when the means of

ingress and egress of premises abutting upon *a* public street to and from *the* street are physically obstructed ... the owner of such premises is entitled to compensation[.]" 87 Ariz. at 372, 351 P.2d at 650 (emphasis added) (citation omitted); *see also Lattie,* 117 Ariz. at 285, 572 P.2d at 113 (interpreting Arizona cases and stating that Article 2, Section 17 "requires that just compensation be paid by a city ... where the easement of ingress or egress of a property owner is substantially impaired"). In *Bilby* and *Lattie,* each of the property owners retained direct access to their properties and yet the owners were entitled to seek compensation under the damages clause based on changes in the grade of the roadways. Moreover, the court in *Thelberg* specifically recognized that "[o]ther means of access may mitigate damages, but does not constitute a defense to the action[.]" 87 Ariz. at 325, 350 P.2d at 992. Under the City's construction of Arizona case law, however, Garretson would not be entitled to compensation even if the City had blocked access to all but one access point. We cannot agree that such a deprivation of access would, as a matter of law, foreclose a property owner from obtaining compensation for the damaging of his property under the Arizona Constitution.

## C. Impairment of Access—Finder of Fact

¶ 35 Garretson asserts that issues of fact exist as to whether he is entitled to damages for the deprivation of access to Jefferson. The City counters, relying on *Wade,* that whether access to Garretson's property has been substantially impaired is a question of law. *See Wade,* 5 Ariz.App. at 509, 428 P.2d at 454 ("The trial court must rule as a matter of law whether the interference of access constitutes a destruction or material impairment."). We disagree with the City's suggestion that *Wade* holds that whether a property's access has been materially impaired is always a question of law. Instead, we conclude that although inartfully worded, the cited language from *Wade* stands for the unremarkable proposition that even though it is the jury's responsibility to find facts, trial courts necessarily retain judgment on whether the facts alleged are sufficient to satisfy

the legal requirements of the wrong alleged. *See, e.g.,* Ariz. R. Civ. P. 50(a) (setting forth the requirements for a motion for judgment as a matter of law and indicating such a motion may be granted where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue"); *Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 505, 917 P.2d 222, 234 (1996) (noting that a "directed verdict is appropriate if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." (internal quotations and citation omitted)).

¶ 36 Other Arizona decisions support the conclusion that whether a substantial impairment exists is ordinarily a question of fact. Our supreme court in *Thelberg* approvingly pointed out that "[t]he trial court found as *a fact* that ... access to the new controlled-access highway had been substantially impaired." 87 Ariz. at 326, 350 P.2d at 992. And in *Schaffer,* the court explicitly stated that whether remaining access to a property is unreasonable is "a question to be resolved by the trier of fact in the first instance." 105 Ariz. at 484, 467 P.2d at 72. In reaching its conclusion, the court in *Wade* did not address *Thelberg,* and instead relied on California cases. *Wade,* 5 Ariz.App. at 509, 428 P.2d at 454. We do not find those cases persuasive, particularly in light of our supreme court's statement in *Schaffer* to the contrary. 105 Ariz. at 484, 467 P.2d at 72; *see also Defnet Land & Inv. Co. v. State ex rel. Herman,* 103 Ariz. 388, 391, 442 P.2d 835, 838 (1968) (recognizing it is the jury's responsibility to "answer the fundamental question ... [of] the market value of the property after the taking measured by its highest and best use as if it had the same access which it had prior to the taking."); *A Tumbling–T Ranches v. Flood Control Dist. of Maricopa Cnty.,* 222 Ariz. 515, 526, ¶ 21, 217 P.3d 1220, 1231 (App.2009) (stating that whether an increased risk of flooding has caused a substantial interference with private property rights under the Arizona Constitution is a

finding "to be made by the trier of fact") (citing *Clausen v. Salt River Valley Water Users' Ass'n*, 59 Ariz. 71, 84–85, 123 P.2d 172, 178 (1942)).

¶ 37 Notwithstanding our determination that substantial impairment is usually a question of fact, we recognize that a trial judge obviously retains the power to make the determination as a matter of law if a property owner fails to establish a genuine issue of material fact as to whether such impairment has occurred. Indeed, the court in *Schaffer* explained that "when it can be said that reasonable minds could not differ[,] the question becomes one of law for the court to decide." *Id.* (quoting *Brock*, 404 P.2d at 945). We believe this approach appropriately suits the in-depth factual review that impairment of access cases necessarily require. As the court in *Wade* acknowledged, "[m]aterial impairment of access cannot be fixed by abstract definition. It must be found in each case upon the basis of the factual situation." 5 Ariz.App. at 509, 428 P.2d at 454. Moreover, our holding here is consistent with the overarching principle that "land is viewed as unique" and therefore demands individualized consideration. *See Woliansky v. Miller*, 135 Ariz. 444, 446, 661 P.2d 1145, 1147 (App. 1983).

## D. Genuine Issues of Material Fact

¶ 38 Applying the foregoing principles, we must determine if genuine factual disputes exist as to whether Garretson's access has been materially impaired. Garretson avowed that because of the Project, the City "destroyed" all access from the Property to Jefferson, which is a "valuable property right," and as a result, the value of the Property has been damaged. Experts retained by Garretson concurred that the Property would be adversely affected. In his "Potential Access Analysis" executive summary, an engineer stated that potential for development of the Property is different because of the location of the light rail line immediately adjacent to the Property on Jefferson, asserting that loss of access would decrease potential office space from 295,000 to 125,000 square feet.

¶ 39 An appraiser noted the Property's "strategic location" in the downtown area (within walking distance of a professional baseball stadium, a professional basketball arena, and the Phoenix Civic Plaza) and that the Property was zoned for high density mixed-use development. Considering the loss of access and the loss of "site prominence" to Jefferson, the appraiser stated that changing development of the Property to a 1st Street/Madison Street location will be "substantially inferior to the location it enjoyed in the before condition." The appraiser concluded further that although the elimination of access to Jefferson "will not change the highest and best use of the property, it will nonetheless have a significant adverse impact on the market value of the remaining site."

¶ 40 Considering these factual assertions in the light most favorable to Garretson, we conclude he presented sufficient evidence creating genuine factual issues as to whether access to his property was materially impaired. *Cf. A Tumbling–T Ranches v. Paloma Inv. Ltd. P'ship*, 197 Ariz. 545, 552–53, ¶ 28, 5 P.3d 259, 266–67 (App.2000) (reversing trial court's grant of summary judgment because affidavits of experts established a genuine issue of fact that breach of a dam increased the property owners' damages beyond the flood itself). We express no opinion as to the amount of compensation, if any, to which Garretson may be entitled. *See Thelberg*, 87 Ariz. at 325, 350 P.2d at 992 (explaining the amount of compensation as the "difference in the value of the remaining property before and after the access thereto has been destroyed or impaired."); *Bilby*, 87 Ariz. at 373, 351 P.2d at 651 (recognizing that the property owner must prove to the trier of fact the loss of value).

## CONCLUSION

¶ 41 For the foregoing reasons, we vacate the trial court's entry of partial summary judgment regarding Garretson's right to seek damages for the loss of access to Jefferson and remand for further proceedings con-

sistent with this opinion and the memorandum decision filed herewith.

CONCURRING: PATRICIA K. NORRIS, and PHILIP HALL, Judges.