IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**CITY OF PHOENIX**, A MUNICIPAL CORPORATION,
*Plaintiff/Appellee,*

*v.*

**JOHN E. GARRETSON**, AS TRUSTEE OF THE EMERY E. OLDAKER TRUST, DATED
JULY 30, 1966; **JOHN E. GARRETSON**, AN UNMARRIED MAN,
*Defendant/Appellant.*

No.  CV-13-0181-PR
Filed April 17, 2014

Appeal from the Superior Court in Maricopa County
The Honorable John A. Buttrick, Judge
No.  CV2007-004793
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
232 Ariz. 115, 302 P.3d 640 (App. 2013)
**VACATED**

COUNSEL:

Charles K. Ayers (argued) and Stephanie Heizer, Ayers & Brown PC,
Phoenix, for City of Phoenix

Dale S. Zeitlin (argued), Zeitlin & Zeitlin PC, Phoenix, for John E.
Garretson and John E. Garretson, as Trustee of the Emery E. Oldaker Trust

Barbara Lawall, Pima County Attorney, Regina L. Nassen and Andrew L.
Flagg, Deputy Pima County Attorneys, Tucson, for Amicus Curiae Pima
County

William F. Bock, League of Arizona Cities and Towns, Phoenix, for
Amicus Curiae League of Arizona Cities and Towns

Thomas C. Horne, Attorney General, Robert L. Ellman, Solicitor General, Joe Acosta, Jr. (argued), and Bryan B. Perry, Assistant Attorneys General, Transportation Section, Phoenix, for Amicus Curiae Arizona Department of Transportation on behalf of John Halikowski, Director

_____

JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BERCH, JUSTICE BRUTINEL, JUSTICE TIMMER, AND JUDGE HOWARD* joined.

_____

JUSTICE PELANDER, opinion of the Court:

¶1        The issue in this case is whether a property owner may be entitled to compensation if the government, in the exercise of its police power, eliminates the owner's established access to an abutting roadway. We hold that under those circumstances an owner may claim compensable damage to private property within the meaning of Article 2, Section 17 of the Arizona Constitution, even if other streets provide access to the property.

**I.**

¶2        The superior court granted the City of Phoenix's motion for partial summary judgment. We therefore view the facts in the light most favorable to John Garretson, the non-moving party. *Gipson v. Kasey*, 214 Ariz. 141, 142 ¶ 2, 150 P.3d 228, 229 (2007).

¶3        Garretson owns a parcel of real property in downtown Phoenix that abuts Jefferson Street to the north, First Street to the east, Madison Street to the south, and another parcel to the west. In 2006, the City started installing light rail tracks along the south side of Jefferson Street abutting the north side of Garretson's property. As part of the installation, the City erected a permanent concrete barrier between the south side of the tracks and Garretson's property. This barrier blocked two driveways that provided vehicular access from Jefferson Street to

_____

* Vice Chief Justice Scott Bales recused himself from this case. Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Joseph W. Howard, Chief Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

Garretson's property. The property, however, still has access via Madison Street.

¶4        After the City finished the project, it filed an eminent domain action to determine the compensation owed to Garretson for a temporary construction easement he granted the City for the purpose of installing the tracks. Garretson counterclaimed, seeking damages for his permanent loss of access to Jefferson Street. The City moved for partial summary judgment on that claim. The superior court granted the motion, ruling that a property owner is not entitled to compensation for loss of access if he retains "free and convenient access" to the property.

¶5        The court of appeals vacated that ruling, holding that "when the government eliminates a property owner's established access to an abutting street and the owner retains access from another street, the owner is not necessarily foreclosed from obtaining compensation for damages to the property under the Arizona Constitution." *City of Phoenix v. Garretson*, 232 Ariz. 115, 118 ¶ 10, 302 P.3d 640, 643 (App. 2013). After summarizing pertinent Arizona cases, *id.* at 118–21 ¶¶ 13–24, 302 P.3d at 643–46, the court identified a "common thread": "the government may not completely remove or substantially impair a property's existing access to an abutting roadway without providing just compensation to the owner." *Id.* at 121 ¶ 25, 302 P.3d at 646. The court also ruled that governmental police powers do not provide "an unqualified right to destroy or substantially impair access without paying just compensation." *Id.* at 122 ¶ 26, 302 P.3d at 647.

¶6        We granted the City's petition for review because the legal issues raised regarding private property rights and governmental police power are likely to recur and are of statewide importance. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶7        The Arizona Constitution provides that "[n]o private property shall be taken or damaged for public or private use without just compensation having first been made." Ariz. Const. art. 2, § 17. Because the City did not permanently take any of Garretson's land, this case does not involve a "taking" or "severance damages" as traditionally

understood in eminent domain or inverse condemnation actions. Rather, this case concerns the damages provision of Article 2, Section 17; the issue is whether the City's elimination of Garretson's preexisting access to Jefferson Street constitutes damage to his private property, supporting a claim for just compensation.

**A.**

¶8 We do not write on a blank slate, but our prior cases are somewhat difficult to reconcile. Although the court of appeals accurately traced this state's jurisprudence, three cases in particular warrant discussion.

¶9 In *State ex rel. Morrison v. Thelberg,* the landowners' property abutted a conventional highway that the state converted to a controlled-access highway with a slightly raised frontage road.[1] 87 Ariz. 318, 321, 350 P.2d 988, 989–90 (1960). Before the conversion, the landowners had "direct and unlimited access" to the conventional highway from their abutting property. *Id.* After the conversion, the landowners retained unlimited access, but only to the frontage road rather than the main highway. *See id.*

¶10 Overruling earlier cases, this Court held that "an abutting property owner to a highway has an easement of ingress and egress to and from his property which constitutes a property right" protected by Article 2, Section 17. *Id.* at 324, 350 P.2d at 991. We further held that the state must compensate landowners when that right of access is "taken away or destroyed or substantially impaired." *Id.* Applying that rule to the facts, we concluded that the landowners' access to the new controlled-access highway had been substantially impaired by the conversion and upheld the trial court's damage award. *Id.* at 325–26, 350 P.2d at 992–93. Because we allowed compensation for that impairment, we implicitly

---

[1] In this opinion, we do not use the terms "highway," "road," "street," and "roadway" in any technical or statutorily defined way, *see* A.R.S. § 28-101(13), (50), (52); rather, we use them generically and interchangeably, as differentiated from a freeway or other "controlled-access" or "limited-access highway," where ingress and egress are permitted only at certain government designated points. *See State ex rel. Herman v. Schaffer*, 105 Ariz. 478, 480, 467 P.2d 66, 68 (1970).

found a property right to directly access a particular road, even when existing access points to and from the property are undisturbed.

¶11        We followed *Thelberg*'s principles in *State ex rel. Herman v. Wilson*, upholding a compensation award when the government destroyed a property owner's access to an abutting road and did not replace it with a frontage road or otherwise.  103 Ariz. 194, 197, 438 P.2d 760, 763 (1968).  In *Wilson*, we recognized that, in the interest of public safety, the government may limit "direct access to a public highway," as long as the alternative route "is not unreasonably circuitous."  *Id.*  After observing that "the substitute access road" in that case was "unreasonably circuitous," *id.*, we held more broadly, "consistent with our former decisions, that the complete destruction of direct access to a public highway constitutes a damaging of property within the meaning of [Article 2, Section 17]."  *Id.*

¶12        In dissent, Chief Justice McFarland found our earlier cases "simply not suitable for . . . super-highways."  *Id.* at 200, 438 P.2d at 766 (McFarland, C.J., dissenting).  In that new context, he urged reconsideration of "our past decisions on the question of compensation for impaired access."  *Id.*  Chief Justice McFarland asserted that the majority misapplied *Thelberg*, which "did not intend to change the rules previously established and to include elements of damage not otherwise compensable."  *Id.* at 201–02, 438 P.2d at 767–68; *see also Defnet Land & Inv. Co. v. State ex rel. Herman* (*Defnet I*), 103 Ariz. 388, 391–92, 442 P.2d 835, 838–39 (1968) (McFarland, C.J., specially concurring) (reiterating his view that prior cases should not apply to controlled-access highway cases).

¶13        A decade after *Thelberg* and just two years after *Wilson*, Justice McFarland authored the Court's unanimous opinion in *State ex rel. Herman v. Schaffer*, 105 Ariz. 478, 467 P.2d 66 (1970), the facts of which are very similar to *Thelberg*'s.  In *Schaffer*, the landowners' properties abutted a divided highway, and each landowner "had direct access to both the northbound and southbound lanes of traffic."  *Id.* at 479, 467 P.2d at 67.  The state converted the divided highway into Interstate 10, after which the landowners retained the same access they previously had, except that the access was to a frontage road that led to I-10, rather than to the freeway itself.  *Id.*  The landowners sought compensation because the state's conversion project deprived them of direct access to a divided highway.  *Id.*

**¶14**　　　　We rejected the landowners' argument, holding that "*direct access to a highway is not a private property right within the contemplation of Article 2, Section 17 of the Arizona Constitution.*" *Id.* at 481, 467 P.2d at 69. Writing for the Court, and consistent with his dissent in *Wilson*, Justice McFarland focused on the novelty of controlled-access highways and the state's need to adequately regulate access for safety reasons. *See, e.g.*, *id.* at 480–81, 467 P.2d at 68–69. The Court framed the "unreasonably circuitous" test, alluded to in *Wilson*, as relating to controlled-access highways.[2] *Id.* at 481, 467 P.2d at 69 (precluding compensation if "the ingress and egress *to the limited-access highway* as provided by a frontage road [is] not so circuitous as to be unreasonable") (emphasis added).

**¶15**　　　　In adopting and applying the "unreasonably circuitous" test in *Schaffer*, this Court recognized that the government may regulate traffic and maintain safety through its police powers. We cited examples of routine exercises of police power, including "prohibiting left turns, prescribing one-way traffic, prohibiting access or crossovers between separate traffic lanes, prohibiting or regulating parking, and restricting the speed, weight, size and character of vehicles allowed on certain highways." *Id.* at 483, 467 P.2d at 71 (quoting *Ray v. State Highway Comm'n*, 410 P.2d 278, 287 (Kan. 1966) (Fatzer, J., concurring)). We concluded that, like those types of changes that do not result in compensable harm to abutting landowners, creating a controlled-access freeway system and regulating "high-speed traffic by limiting access" are also noncompensable governmental actions. *Id.*

**¶16**　　　　A landowner, we observed, "has never had a property right in the traffic, great or small, on the highway, nor a right to recover damages for a decrease in value of her premises by reason of the diversion of traffic away from her property." *Id.* at 483, 467 P.2d at 71 (quoting *State ex rel. State Highway Comm'n v. Meier*, 388 S.W.2d 855, 857 (Mo. 1965)). Because the controlled-access highway conversion left the landowners

---

[2]　　　Given that emphasis, the court of appeals in this case understandably viewed *Schaffer*'s "unreasonably circuitous" test as limited to cases involving "whether access to controlled-access highways has been substantially impaired." *Garretson*, 232 Ariz. at 123 ¶ 31, 302 P.3d at 648.

with the same access they had before the conversion, they could not obtain compensation for the loss of "direct access to the mainstream of traffic." *Id.* at 479, 467 P.2d at 67; *see also id.* at 486, 467 P.2d at 74 (finding landowners' "limitation of access" claim not compensable when their access to I-10 via remaining frontage road "was not unreasonably circuitous").

**B.**

**¶17** Taken together, *Thelberg*, *Wilson*, and *Schaffer* direct whether landowners may have a compensable claim for damage to a property right caused by roadway alterations when no physical property is taken. A landowner's preexisting means "of ingress and egress to and from his property . . . constitutes a property right," the taking or damaging of which may require compensation under Article 2, Section 17. *Thelberg*, 87 Ariz. at 324, 350 P.2d at 991; *see also Wilson*, 103 Ariz. at 197, 438 P.2d at 763. That property right, however, is not taken or damaged when the government alters a highway but leaves existing access points unchanged, unless the access to the roadway system is "unreasonably circuitous." *Schaffer*, 105 Ariz. at 484–85, 467 P.2d at 72–73.

**¶18** This rule does not undermine the government's broad authority to regulate traffic and maintain safety through its police power. In general, governmental entities may alter highways without compensating landowners whose property is devalued by various roadway projects and traffic flow changes. *See id.* "[N]ot all . . . damage resulting from a highway improvement [is] compensable." *Rayburn v. State ex rel. Willey*, 93 Ariz. 54, 57, 378 P.2d 496, 498 (1963). Thus, a property owner is not entitled to compensation simply because changes in the type, features, or traffic flow of an abutting roadway, or the construction of a new road, reduce his property's value. Stated differently, there is no constitutionally protected right of access to a particular roadway, nor does a landowner's entitlement to compensation hinge on the nature or characterization of the old or new roadway.

**¶19** Governmental police powers, however, are not unlimited, and their exercise does not automatically preclude compensation. When an alteration destroys or substantially impairs a preexisting right of access, the affected landowner may be entitled to compensation, even

though the alteration is permissible as an exercise of the police power. *See Thelberg*, 87 Ariz. at 324, 351 P.2d at 991.

¶20        In clarifying the rule announced today, we find persuasive *City of Wichita v. McDonald's Corp.*, 971 P.2d 1189 (Kan. 1999).[3]  In that case, the Kansas Supreme Court distinguished between impairment of a "right of access" and "regulation of traffic flow." *Id.* at 1197.  "Right of access" refers to the "common-law right of access from the landowner's property to abutting public roads." *Id.*  A government generally owes compensation when it takes or destroys the landowner's right of access, but not when a project results merely in regulating or reducing traffic flow. *Id.*  For example, the court concluded, "where a new highway is constructed, moved, or traffic is re-routed," landowners are generally not entitled to compensation even if they are "adversely affected by the changes." *Id.*

¶21        Based on that distinction, the Kansas court ruled that a landowner was not entitled to compensation when the City of Wichita converted an abutting road from a four-lane divided highway to a six-lane highway but did not affect the landowner's access. *Id.* at 1198.  The court characterized the case as involving the city's "regulation of traffic flow" rather than impairment of a "right of access," because the landowner retained the four access points along the abutting road that had existed before the alteration. *Id.*  Thus, the landowner was not entitled to compensation. *Id.*

¶22        Consistent with the Kansas court's distinction, we conclude that this case involves Garretson's right of access, not merely a police-power regulation of traffic flow, as the City argues.  The City completely eliminated Garretson's preexisting access to Jefferson Street, leaving him with no means of ingress or egress to that street or any replacement roadway in that location.  Under these circumstances, he has a claim for compensation under the Arizona Constitution.

---

[3]        Notably, in *Schaffer* this Court drew heavily from Kansas case law. *Schaffer*, 105 Ariz. at 481–84, 467 P.2d at 69–72.

**C.**

¶23       Despite Garretson's loss of all direct access to Jefferson Street and the north side of his property, the City and several governmental amici argue that he is not entitled to compensation because he has other ways to get to that street that are not "unreasonably circuitous," as described in *Schaffer*.  In light of *Schaffer*'s express holding that "*direct access to a highway is not a private property right within the contemplation of Article 2, Section 17 of the Arizona Constitution*," 105 Ariz. at 481, 467 P.2d at 69, this argument might seem persuasive.  But contrary to the City's position, we view *Schaffer* as refining, rather than revoking, our prior cases in an attempt to mesh results that admittedly seem inconsistent.

¶24       Contrary to the City's assertion, *Schaffer* did not overrule *Thelberg*, and indeed it cited *Thelberg* and *Wilson* without questioning either.  *See Schaffer*, 105 Ariz. at 485, 467 P.2d at 73 (quoting *Wilson*'s holding without disavowing it, and citing with approval *Thelberg*'s discussion of the proper measure of damages).  But the results in *Thelberg* and *Schaffer* are difficult to reconcile.  Under a strict application of *Thelberg*'s rule, *see supra* ¶ 10, the landowners in *Schaffer* would have prevailed on their right of access claim because in both cases the landowners' damages stemmed from impaired access to the new controlled-access highway.  *Id.* at 479, 467 P.2d at 67; *Thelberg*, 87 Ariz. at 326, 350 P.2d at 992–93.  And conversely, had the rule in *Schaffer* applied in *Thelberg*, the result in *Thelberg* might have been different.  *Schaffer*, then, necessarily rejected *Thelberg* only to the extent *Thelberg* found that impairing direct access to a particular highway is compensable, even if preexisting access points remained undisturbed.  The inconsistency of results in *Thelberg* and *Schaffer*, however, does not mean that the latter overruled the former entirely.

¶25       In concluding that the principles announced in *Thelberg* survive *Schaffer*, we observe that just two years before he authored *Schaffer*, Justice McFarland dissented in *Wilson* and called for reevaluating, not overruling, cases like *Thelberg* "when applied to the new type of high-speed limited-access highways now being built."  *Wilson*, 103 Ariz. at 200, 438 P.2d at 766 (McFarland, C.J., dissenting).  Additionally, some of the same justices who joined in *Schaffer* also joined in *Thelberg* and *Wilson*.  Given that fact, the absence of any suggestion in *Schaffer* that *Thelberg* was

overruled, and the lack of any dissenting or specially concurring opinion in *Schaffer*, it is unlikely that the Court in *Schaffer* intended to implicitly overrule *Thelberg* and *Wilson*. Rather, *Schaffer* achieved exactly what Justice McFarland sought to accomplish in his *Wilson* dissent—a reconsideration of how *Thelberg*'s principles should apply in the modern era of controlled-access highways.

¶26 *Schaffer* is best viewed as a case that corrected course on how the law should apply to a controlled-access highway conversion when the landowner's preexisting means of ingress and egress are neither destroyed nor substantially impaired. *Thelberg* announced the general rule that a landowner's right to access abutting roads is a constitutionally protected property right, the destruction or substantial impairment of which is compensable. 87 Ariz. at 324, 350 P.2d at 991. *Thelberg*, however, incorrectly applied that rule to a landowner who did not lose any access to an abutting road but rather sought compensation for his inability to directly access a newly built controlled-access highway. *Schaffer* corrected *Thelberg*'s misapplication of the general rule, concluding instead that a landowner has no "direct-access right" to a newly built controlled-access highway unless the remaining access is "unreasonably circuitous." *Schaffer*, 105 Ariz. at 484, 485, 467 P.2d at 72, 73.

¶27 Likewise, *Wilson*'s mention of the "unreasonably circuitous" test is confusing and unnecessary because there, as in this case, the government project completely eliminated the landowner's preexisting access. *Wilson*, 103 Ariz. at 197, 438 P.2d at 763. The "unreasonably circuitous" test applies only when a property owner claims that the government project substantially impairs access.

¶28 In sum, the rules set forth in *Thelberg* and its progeny, including *Schaffer*, remain good law.[4] Consistent with our prior cases, we

---

[4] The progression of the *Defnet* case is consistent with our view that *Thelberg* and its progeny survive *Schaffer*. In *Defnet I*, decided pre-*Schaffer*, landowners lost direct access to Route 66 as a result of the state constructing Interstate 40. 103 Ariz. at 391, 442 P.2d at 838. We remanded the case to the trial court in part because the state's appraisers did not adequately consider the property's loss of direct access, as required by *Thelberg*. *Id.* On retrial, the jury awarded damages for that loss, and the court of appeals affirmed the award post-*Schaffer*. *Defnet Land & Inv. Co. v.*

hold that a property owner is entitled to compensation if the government either completely eliminates or substantially impairs the owner's access to an abutting road and thereby causes the property's fair market value to decrease. As noted above, however, a landowner who claims or establishes only substantial impairment is not entitled to compensation unless the remaining access is unreasonably circuitous.

**D.**

¶29        In arguing that Garretson is not entitled to compensation, the City relies heavily on two court of appeals' cases: *Tucson Title Ins. Co. v. State ex rel. Herman*, 15 Ariz. App. 452, 489 P.2d 299 (1971), and *City of Phoenix v. Wade*, 5 Ariz. App. 505, 428 P.2d 450 (1967). But in both *Wade* and *Tucson Title*, the landowners retained the access they had before the government projects. *See Wade*, 5 Ariz. App. at 509, 428 P.2d at 454 (holding that because a "curb cut [was] sufficient" in providing the landowners access to a driveway they previously could use, "the landowners' right[] to ingress and egress was not materially impaired or destroyed"); *Tucson Title Ins. Co.*, 15 Ariz. App. at 456, 489 P.2d at 303 ("In the 'after situation' El Toro Road will pass under the new highway, thus giving the land the same access and mode of travel on El Toro as existed in the 'before situation.'"). Consistent with those cases and with *Schaffer*, we agree that when a road alteration leaves existing access untouched, a landowner is not entitled to compensation based solely on a reconfiguration of the roadway system or the reduction or other change of traffic flow in the area. But in contrast to *Wade* and *Tucson Title*, the City completely eliminated Garretson's preexisting access to Jefferson Street and left him with no means of ingress or egress on that side of his property.

¶30        The City also argues that Garretson is not entitled to compensation because his property is not land-locked, and he has reasonable alternative means of access to the roadway system, including Jefferson Street. In *Thelberg*, however, we explicitly found that "[o]ther means of access may mitigate damages, but does not constitute a defense

*State ex rel. Herman* (*Defnet II*), 14 Ariz. App. 96, 103, 480 P.2d 1013, 1020 (1971). Had *Schaffer* overruled *Thelberg*, the court of appeals in *Defnet II* could not have affirmed because the jury's award in *Defnet II* was based in part on *Thelberg*'s rule that loss of direct access is compensable.

to the action."  87 Ariz. at 325, 350 P.2d at 992 (internal citation omitted).
We reaffirm that principle here.  The availability of other means of access
in a case such as this is relevant only to the measure of damages.

**E.**

¶**31**          We next address the City's argument, based on *Wade*, that in
cases such as this trial courts, in their "gatekeeper function," must always
preliminarily determine as a matter of law whether the government's
action caused a material impairment of access.  *See Wade*, 5 Ariz. App. at
509, 428 P.2d at 454 (stating that "[t]he trial court must rule as a matter of
law whether the interference of access constitutes destruction or material
impairment").  That contention misses the mark because this case involves
the City's elimination, not material impairment, of preexisting access.  In
addition, *Wade* was decided before *Schaffer*, in which we stated that
whether a property's remaining access is unreasonable "is a question to be
resolved by the trier of fact in the first instance."  *Schaffer*, 105 Ariz. at 484,
467 P.2d at 72.

¶**32**          Thus, *Schaffer* implicitly rejected the notion that liability in
cases such as this is always a legal question.  Moreover, determining
liability as a matter of law in *Wade* was appropriate because the facts there
were undisputed; the landowners previously had used a driveway to
access the abutting street, and after the government project they retained
that same access.  *Wade*, 5 Ariz. App. at 507–08, 428 P.2d at 452–53.
Similarly, when, as here, no genuine issue of material fact exists on
whether the landowner's access has been eliminated, the liability question
may be resolved as a matter of law.

¶**33**          The parties agree that Garretson previously had two points
of direct access to Jefferson Street that the City completely eliminated.
The parties dispute only the legal issue of whether Garretson may be
entitled to compensation based on his loss of access, an issue we have
resolved in his favor.  Under these circumstances, there is no need to
litigate or resolve whether Garretson's access has been substantially
impaired or whether his remaining access is unreasonably circuitous.
Rather, the only pertinent question remaining is whether Garretson's
complete loss of access to Jefferson Street decreased the fair market value
of his property, a factual issue on which we express no opinion.  *See
Thelberg*, 87 Ariz. at 325, 350 P.2d at 992 (explaining the amount of

compensation as the "difference in the value of the remaining property before and after the access thereto has been destroyed or impaired"); *Pima County v. Bilby*, 87 Ariz. 366, 373, 351 P.2d 647, 651 (1960) (recognizing that the property owner must prove to the trier of fact the loss of value).

¶34        As the court of appeals correctly noted, however, Garretson did not cross-move for partial summary judgment on the issue of liability. *Garretson*, 232 Ariz. at 117 ¶ 10 n.7, 302 P.3d at 642 n.7. Nonetheless, because the City is not entitled to judgment as a matter of law on that issue, *see* Ariz. R. Civ. P. 56(a), the superior court erred in entering partial summary judgment in its favor.

### III.

¶35        We reverse the superior court's grant of partial summary judgment in favor of the City, vacate the court of appeals' opinion, and remand the case to the superior court for further proceedings consistent with this opinion.